KNOLL, Justice.
 

 _JjAt issue in this vehicular homicide case is whether the trial court correctly granted the defendant’s motion to suppress statements she made at the scene of a fatal, one-car accident in which the passenger was killed after the defendant lost control of her car and flipped it upside down.
 
 *226
 
 This brings into question whether the trial court properly suppressed the results of a blood-alcohol test taken under the provisions of La.Rev.Stat. § 32:662 as presumptive evidence to establish the defendant’s intoxication. For reasons that follow, we reverse the trial court’s ruling to the extent it suppressed defendant’s statements made at the scene of the vehicular accident. In all other respects, we deny the State’s writ application.
 

 FACTS AND PROCEDURAL HISTORY
 

 On July 8, 2006,
 
 [1]
 
 Rachel Shirley (hereafter “defendant”) ran a stop sign at the intersection of Louisiana Highways 327 and 99 land flipped her vehicle in a one-car accident. Defendant’s passenger died as a result of injuries she sustained in the crash.
 

 ^According to the testimony of Kevin Ambeau, Sr., the Chief of Police for the City of St. Gabriel,
 
 [2]
 
 at the hearing on defendant’s motion to suppress, Officer Cody Casto, a policeman with the St. Gabriel police department, was initially dispatched to the accident scene. Utilizing Officer Casto’s accident report as a basis for his testimony, Chief Ambeau stated the defendant informed Officer Casto she had been drinking; specifically, she told Officer Casto she drank two Smirnoff’s and two Budlight beers. Later, when Chief Ambeau learned at Our Lady of the Lake Regional Medical Center that defendant’s passenger die d, he directed Officer Casto to have hospital personnel obtain blood samples from defendant. After receiving the two vials allegedly containing the defendant’s blood sample, Officer Casto stored both vials in a refrigerator at the St. Gabriel Police headquarters. Subsequently, Chief Ambeau delivered the blood samples to the Louisiana State Police Crime Laboratory for scientific analysis.
 

 The only other person to testify at the hearing on the defendant’s motion to suppress was Kesha Malveaux, a forensic scientist employed at the toxicology section of the Louisiana State Police Crime Laboratory. Using a gas chromatograph, Mal-veaux tested the two samples of blood that Chief Ambeau delivered. She testified that the blood-alcohol result for both samples was a 0.03 grams percent.
 
 [3]
 

 On August 30, 2007, a grand jury for the Parish of Iberville indicted defendant for vehicular homicide where the operator is under the influence of alcoholic ^beverages “as determined by chemical tests administered under the provisions of R.S. 32:662”, a violation of La.Rev.Stat. § 14:32.1(A)(1).‘
 
 [4]
 
 After entering a plea of not guilty and
 
 *227
 
 asking for a jury trial, the defendant filed a motion to suppress her oral statements made after the accident. Additionally, the defendant sought to suppress the blood-alcohol test results for failure to comply with the requirements for administering the blood-alcohol test set out in La.Rev. Stat. § 32:661-669 and Title 55 of the Louisiana Administrative Code.
 

 After hearing the testimony of Chief Ambeau and Malveaux, the trial court granted the defendant’s motion to suppress. The trial court suppressed the defendant’s statements, noting that the State failed to produce Officer Casto to testify about the statements defendant made at the accident scene and instead only relied upon Chief Ambeau’s hearsay testimony. In further explanation of its decision, the trial court did not consider Chief Ambeau’s hearsay testimony and found that although the defendant was not immediately under arrest after the accident, she was detained and should have been advised of her
 
 Miranda
 
 rights. With regard to the test results from the forensic examination of the defendant’s blood samples, the trial court found the State failed to produce a witness from the hospital to show that the defendant’s blood was drawn by a qualified person in conformity with La.Rev.Stat. § 32:664(A) (1999) and the procedures approved and promulgated by the Louisiana Department of Public Safety and Corrections. Therefore, it also suppressed the results of the blood-alcohol tests.
 

 |,(The State filed a writ application with the Court of Appeal, First Circuit, seeking reversal of the trial court’s rulings on the defendant’s motion to suppress. A majority of the appellate panel affirmed the- trial court’s rulings, finding no abuse of discretion. One appellate court judge agreed on the issue of the suppression of the blood-alcohol test results, but dissented on the suppression of the defendant’s oral statements, finding the defendant was neither under arrest nor detained at the time the statements were made.
 

 We granted the State’s writ application to address the trial court’s disposition of the defendant’s motion to suppress both her oral statements and the blood-alcohol test results.
 
 State v. Shirley,
 
 08-2106 (La.11/26/08), 997 So.2d 540.
 

 Defendant’s Oral Statement
 

 The State contends the defendant’s statement that she had been drinking alcohol should not have been suppressed. The State avers the trial court erred when it ruled Chief Ambeau’s testimony was hearsay because well established jurisprudence has recognized that hearsay testimony is admissible in a suppression hearing. Moreover, relying on
 
 State v. Levy,
 
 292 So.2d 220 (La.1974), the State asserts
 
 Miranda
 
 warnings were not required at this point because the testimony of Chief Am-beau shows defendant was neither under arrest nor detained when she made her statement about drinking.
 

 On the other hand, the defendant asserts the trial court correctly applied the rules of evidence in this hearing on defendant’s motion to suppress. Focusing on La.Code Evid. art. 1101,
 
 [5]
 
 the defendant
 
 *228
 
 contends that formal evidentiary rules apply in | ^hearings on motions to suppress evidence. Thus, she contends the trial court properly refused to consider Chief Ambeau’s hearsay testimony. For reasons which follow, we find the trial court erred when it excluded Chief Ambeau’s testimony.
 

 | (After reviewing the provisions of La.Code Evid. art. 104 and 1101, it is evident confusion may exist on the question of whether hearsay evidence may be admissible at a hearing on a motion to suppress. Such confusion is exacerbated by one of the Comments to La.Code Evid. art. 1101 which states that “Subparagraph (B)(8) coupled with Paragraph A continues in effect the requirement that formal evi-dentiary rules generally apply in hearings on motions to suppress evidence.” Notwithstanding the facial confusion and the text of the Comment, we find resolution of the question in La.Code Evid. art. 1101(C)(1) which explicitly states the provisions of the Code of Evidence are not applicable to “[t]he determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under [La.Code Evid.] Article 104.” As stated in Article 104, “[preliminary questions concerning ... the admissibility of evidence shall be determined by the court ... In making its determination it is not bound by the rules of evidence except those with respect to privileges.” Accordingly, we find the exclusionary clause of La.Code Evid. art. 1101(B)(8), when considered in
 
 pan mate-riae
 
 with La.Code Evid. art. 104, may be read to generally exempt hearings on motions to suppress evidence from the rules of evidence except with respect to privileges. Thus, La.Code Evid. art. 1101(B) may be read harmoniously with the provisions of La.Code Evid. art. 104(A).
 

 Furthermore, even though this Court has never elaborated on the interplay of Articles 104 and 1101 of the Code of Evidence, our research shows we have recognized hearsay rules do not apply in hearings on motions to suppress evidence.
 
 State v. Castleberry,
 
 99-1388 (La.4/13/99), 758 So.2d 749;
 
 [6]
 

 see also United States v.
 
 
 *229
 

 Matlock,
 
 415 U.S. 164, 172-75, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (holding that “the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence.... There is, therefore, much to be said for the proposition that in proceedings where the judge himself is considering the admissibility of evidence, the exclusionary rules, aside from rules of privilege, should not be applicable; and the judge should receive the evidence and give it such weight as his judgment and experience counsel.”)
 

 After reviewing the jurisprudence and the provisions of La.Code Evid. arts. 104 and 1101, we find the trial court erred when it failed to consider Chief Ambeau’s testimony which was drawn, at least in part, from Officer Casto’s written accident report. When the trial court considered whether the defendant was under arrest or detained when she made her statement to Officer Casto and whether her statement that she consumed alcoholic beverages was admissible, it should have taken into consideration Chief Ambeau’s testimony, including the portion drawn from Officer Casto’s police report, when it ruled on the defendant’s motion to suppress. Having addressed this preliminary evidentiary matter, we now turn our attention to the question of whether
 
 Miranda
 
 warnings were necessary as a prerequisite to the admissibility of the defendant’s statement.
 

 The obligation to provide
 
 Miranda
 
 warnings attaches only when a person is questioned by law enforcement after he has been taken “into custody or otherwise deprived of his freedom of action in any significant way.”
 
 Miranda v. Arizona,
 
 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966);
 
 State v. Payne,
 
 2001-3196 (La.12/4/02), 833 So.2d 927, 934. Custody is decided by two distinct inquiries: an objective assessment of the lodrcumstances surrounding the interrogation to determine whether there is a formal arrest or restraint on freedom of the degree associated with formal arrest; and, second, an evaluation of how a reasonable person in the position of the interviewee would gauge the breadth of his freedom of action.
 
 Stansbury v. California,
 
 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994),
 
 (citing California v. Beheler,
 
 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275(1983)(per
 
 curiam), Oregon v. Mathiason,
 
 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714(1977)(per curiam)).
 
 See Thompson v. Keohane,
 
 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995).
 

 As such,
 
 Miranda
 
 warnings are not required when officers conduct preliminary, non-custodial, on-the-scene questioning to determine whether a crime has been committed, unless the accused is subjected to arrest or a significant restraint short of formal arrest.
 
 State v. Davis,
 
 448 So.2d 645, 651-652 (La.1984);
 
 State v. Mitchell,
 
 437 So.2d 264, 266 (La.1983);
 
 State v. Thompson,
 
 399 So.2d 1161, 1165-1167 (La.1981), dissent at 400 So.2d 1080;
 
 State v. Menne,
 
 380 So.2d 14, 17 (La.1980),
 
 cert. denied sub nom. Louisiana v. Menne,
 
 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39(1980);
 
 State v. Hodges,
 
 349 So.2d 250, 255-257 (La.1977),
 
 cert. denied,
 
 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978);
 
 State v.Brown,
 
 340 So.2d 1306, 1308 (La.1976);
 
 State v. Watkins,
 
 526 So.2d 357, 359-360 (La.App. 4 Cir.1988). Thus, an individual’s responses to on-the-scene and non-custodial questioning, particularly when carried out in public, are admissible
 
 *230
 
 without
 
 Miranda
 
 warnings.
 
 See State v. Davis, supra
 
 (Question, “Who shot the deer?” directed to a group of hunters did not point the finger of suspicion at any one person, even though wildlife agent knew that adult female deer had been taken and that citizens were holding the culprits, and therefore did not require
 
 Miranda
 
 warnings);
 
 State v. Thompson, supra
 
 (question of “how he came by the blood spots on his shirt,” asked by officer of man in motel lobby identified as perpetrator of | ^assault and who agreed to talk with the officer, was to learn if crime had occurred and therefore occurred in a pre-custodial setting which did not require
 
 Miranda
 
 warnings);
 
 State v. Mitchell, supra
 
 (question asked by an Arkansas deputy after handcuffing a drunken Monroe driver for traffic offenses and noticing dried blood on his neck, “What happened?” did not amount to custodial interrogation for
 
 Miranda
 
 purposes; defendant’s reply, “My wife shot me,” admissible without
 
 Miranda
 
 warnings under time pressure of finding injured wife).
 

 Similarly, although a motorist stopped for a traffic violation or an individual detained in a
 
 Terry
 
 stop based on reasonable suspicion has had his freedom of movement curtailed in a significant way, until an arrest actually occurs, these Fourth Amendment seizures do not constitute custody for
 
 Miranda
 
 purposes.
 
 Berkemer v. McCarty,
 
 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)(“The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that
 
 Terry
 
 stops are subject to the dictates of
 
 Miranda.”).
 

 In the present case, Chief Ambeau had available the content of Officer Casto’s report which described the circumstances surrounding the preliminary stages of the investigation into the accident and subsequent death of the defendant’s passenger. In particular, Chief Ambeau could refer to the report which showed the defendant stated she did not see a stop sign when she rounded the curve of the road and came upon the intersection, and that she had “two Smirnoffs and two Budlights.” Moreover, Chief Ambeau, testified, in part on the basis of his personal observations on the scene, that defendant was not placed in handcuffs before she was taken by ambulance to the hospital, and also on the basis of his review of the written report of Officer Casto, that defendant had not been arrested for driving while intoxicated | ipbefore she was transported to the hospital.
 
 [7]
 
 Although it cannot be gainsaid that the State did not fully develop the facts related to the what transpired after the defendant’s accident, the record does not support the trial court’s finding that although Officer Casto may not have placed the defendant under arrest, “certainly [the defendant] was being detained ... and should have been advised of her rights....” Trial Tr. at 116. Under the facts established in the record, even as sketchily developed at the hearing on the motion to suppress,
 
 Miranda
 
 warnings were not required. Therefore, the trial court erred when it suppressed the defendant’s statements at the accident scene.
 

 For these reasons, we reverse the trial court’s ruling to the extent it ordered suppressed the defendant’s statements made
 
 *231
 
 at the scene of the vehicular accident to Officer Cody Casto.
 

 Blood-Alcohol Test Results: Use as Presumptive Evidence of Intoxication
 

 Contending this Court has never addressed the issue, the State argues that the defendant had no basis for moving to suppress the results of the blood-alcohol test. Drawing on the language of La.Code Crim. Proc. art. 703(A), which provides that “[a] defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained”, the State contends the defendant neither alleged in her motion to suppress nor showed at the hearing on that motion any constitutional violation occurred in the taking of the blood samples.
 

 [nIn stark contrast to the State’s contention, the defendant avers this Court resolved this issue in
 
 State v. Tanner,
 
 457 So.2d 1172 (La.1984). She points out that in
 
 Tanner
 
 this Court held a motion to suppress evidence under La. Crim. Code art. 708(A) provides the appropriate procedural vehicle for challenging the admissibility of blood-alcohol test results, not on the grounds of any asserted constitutional violation, but on grounds the testing did not conform to the exacting standards established by the Department of Public Safety for conducting such tests when the results are used as a basis for applying the presumptive levels of intoxication set out in La.Rev.Stat. § 32:662.
 
 Tanner,
 
 457 So.2d at 1174.
 

 In
 
 Tanner,
 
 Justice Marcus writing for the majority, stated:
 

 Generally, questions of admissibility, relevance and weight of evidence are properly resolved at trial on the merit s, not by pretrial motions.
 
 See State v. Garnier,
 
 261 La. 802, 261 So.2d 221 (1972). However, the evidence in question in this case, the results of a chemical test, can give rise to a presumption that the person was under the influence of alcoholic beverages. La.R.S. 32:662. This rebuttable presumption of intoxication can be used to satisfy the “under the influence of alcohol” element of the state’s case in a driving while intoxicated prosecution, La.R.S. 14:98. Also, in negligent homicide prosecutions, the presumption can be used to establish the fact of intoxication from which the fact-finder can determine criminal negligence.
 
 State v. Green,
 
 418 So.2d 609 (La.1982). Consequently, it has been held that the wrongful introduction of a chemical analysis test result, which by law presumes a defendant to be intoxicated, is so prejudicial to the defendant that a resulting conviction cannot stand, even if there is other evidence of intoxication.
 
 State v. Morrison,
 
 392 So.2d 1037 (La.1980);
 
 State v. Goetz,
 
 374 So.2d 1219 (La.1979);
 
 State v. Graham,
 
 360 So.2d 853 (La.1978). In view of the vital role that the legal presumption plays in determining guilt and the highly prejudicial nature of chemical test results if wrongfully introduced, it would serve the orderly administration of justice and further insure the defendant a fair trial if the admissibility of the test results could be determined in a pretrial proceeding.
 

 In the present case, defendant sought to raise objection to the admissibility of the chemical test results by way of a motion to suppress. La.Code Crim. P. art. 703 provides that a defendant adversely affected may move to suppress any evidence from use at trial on the merits on the ground that it was unconstitutionally obtained. However, the evidence in the present case was constitutionally seized.
 
 Schmerber v. State of
 
 California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Therefore,
 
 *232
 
 a literal reading of art, 703 would seem to exclude the use of a motion to suppress to test admissibility. La.Code Crim. P. art. 3 provides that “[w]here no procedure is specifically prescribed by this Code or by statute, the court may proceed in a manner consistent with the spirit of the provisions of this Code and other applicable statutory and constitutional provisions.” Pursuant to this authority, this court has judicially extended the function of the motion to suppress to testimony alleged to be tainted by improper lineup procedures.
 
 State v. Wilkerson,
 
 261 La. 342, 259 So.2d 871 (1972). For the reasons set forth above, we believe that the use of the motion to suppress to question the admissibility of chemical test results is “consistent with the spirit of the provisions of this Code” and should be permitted in keeping with the procedural guidelines set forth in art. 703(D). The burden of proving the admissibility of the chemical test results would be on the state as in the case of a confession or evidence seized without a warrant. Thus, pursuant to our authority under art. 3 to establish procedural guidelines in the absence of specific legislative procedural rules, we hold that a motion to suppress is available to question the admissibility of chemical test results that can result in the legal presumption of intoxication.
 

 Later, Justice Marcus further elaborated:
 

 When the legislature authorized the chemical analysis of a motorist’s blood and created a statutory presumption of intoxication in the event that his blood contained the requisite percent of alcohol, it conditioned the validity of the chemical test upon its having been performed according to methods approved by the Department of Public Safety. La.R.S. 32:663. This court has repeatedly recognized the importance of establishing safeguards to guarantee the accuracy of chemical tests. In a criminal prosecution, before the state may avail itself of the statutory presumption of defendant’s intoxication, arising from chemical analysis of his blood, without violation of his constitutional due process guarantee of a fair trial, it must show that the state has promulgated detailed procedures which will insure the integrity and reliability of the chemical test, including provisions for repair, maintenance, inspection, cleaning, certification, and chemical accuracy. It must also show that the state has strictly complied with the promulgated procedures.
 
 State v. Krause,
 
 405 So.2d 832 (La.1981);
 
 State v. Morrison,
 
 [392 So.2d 1037 (La.1980)];
 
 State v. Goetz,
 
 [374 So.2d 1219 (La.1979)];
 
 State v. Graham,
 
 [360 So.2d 853 (La.1978)];
 
 State v. Jones,
 
 316 So.2d 100 (La.1975). Since it is permissible for the state to use the statutory presumption of intoxication in negligent homicide prosecutions, the same rigid admissibility requirements that exist in DWI cases must be satisfied in the instant case. See
 
 State v. Green,
 
 [418 So.2d 609 (La.1982)].
 

 Tanner,
 
 457 So.2d at 1175.
 

 Our unanimous decision in
 
 Tanner
 
 has remained unassailed for 25 years, and 113its reasoning and holding remain disposi-tive of the issue presented today. As required in
 
 Tanner,
 
 before the State may avail itself of the statutory presumption of defendant’s intoxication, arising from chemical analysis of his blood, it was incumbent upon the State to show strict compliance with the detailed procedures adopted to secure the efficacy and reliability of the chemical test. One such requirement is that when a person submits to a blood test at the request of a law enforcement officer, “only a physician, registered nurse, qualified technician, or chemist may
 
 *233
 
 withdraw blood for the purpose of determining the alcoholic content or presence of any abuse or illegal controlled dangerous substances therein.” La.Rev.Stat. § 32:664(A) (1999);
 
 [8]
 

 see
 
 La. Admin. Code, Title 55: Part I, § 565(A) (“Each ‘chemist’ and each ‘qualified technician,’ as these terms are utilized in R.S. 32:664, must be certified by an accredited licensing agency as a certified phlebotomist in order to remove blood samples for purposes of determining alcoholic content.”).
 

 Our review of the record shows the State provided no testimony that a qualified person drew the defendant’s blood sample. Although Chief Ambeau testified that one of the nurses at the hospital gave the blood samples to Officer Casto, he presented 114no testimony about the identity of the person who drew the defendant’s blood or whether the person who drew the blood sample was qualified to perform that task. Likewise, even though the forensic scientist who tested the blood samples stated she received the sample in an approved blood collection kit, she also knew nothing about the person who drew defendant’s blood or the qualifications of the person who drew the blood from the defendant.
 

 Considering the foregoing, we find, as did the trial court, the State failed to carry its burden of demonstrating strict compliance with those regulations in the taking of the blood sample from the defendant. Insofar as the defendant’s test results were sought to be used by the State as presumptive evidence of her guilt, we find them inadmissible. Accordingly, to the extent the State sought to rely upon the results of the blood-alcohol test as presumptive evidence of the defendant’s intoxication, we affirm the trial court’s decision to suppress those results to that extent.
 

 Notwithstanding the unavailability of the blood-alcohol test results as presumptive evidence of intoxication, assuming the results are otherwise reliable, the State may use blood-alcohol test results obtained without strict compliance with the presumptions in La.Rev.Stat. § 32:662,
 
 ie.,
 
 as circumstantial evidence that would allow the fact-finder to draw an
 
 inference
 
 of the defendant’s intoxication.
 
 State v. Barker,
 
 629 So.2d 1119, 1120 (La.1993);
 
 State v. Honeyman,
 
 560 So.2d 825, 829 (La.1990);
 
 State v. McElroy,
 
 553 So.2d 456 (La.1989).
 
 Compare
 
 La.Rev.Stat. § 14:32.1(A)(1) (providing that vehicular homicide may be proved through the use of presumptive evidence of intoxication as detailed in La. Rev.Stat. § 32:662)
 
 to
 
 La.Rev.Stat. § 14:32.1(A)(4) (simply providing that vehicular homicide may be proved where the operator is under the influence of alcoholic beverages). The use of the | ^blood-alcohol test results remains as viable inferential evidence of the defendant’s intoxication.
 
 State v. Barker,
 
 629 So.2d at 1120;
 
 State v.
 
 
 *234
 

 Honeyman,
 
 560 So.2d at 829;
 
 State v. McElroy,
 
 553 So.2d at 456.
 

 DECREE
 

 Fpr the foregoing reasons, the State’s writ application is granted in part and denied in part. The trial court’s ruling is reversed to the extent that it ordered suppressed the defendant’s statements made at the scene of the vehicular accident to Officer Cody Casto. In all other respects, the State’s writ application is denied. This case is remanded to the trial court for further proceedings in conformity with the views expressed in this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; CASE REMANDED TO THE TRIAL COURT.
 

 [1]
 

 . There is a discrepancy in the record regarding the date of the accident. The indictment reads that the accident occurred on or about July 8, 2006. In his testimony at the suppression hearing, Kevin Ambeau, Sr., the Chief of Police for the City of St. Gabriel, stated the accident was on or about July 10, 2006.
 

 [2]
 

 . Officer Casto did not testify at the suppression hearing. His absence is not explained in either the record or the briefs filed with this Court.
 

 [3]
 

 . The test result, 0.03, falls within the range of presumptive sobriety for adults. La.Rev. Stat. § 32:662(A)(l)(a). Considering the defendant's action in seeking to suppress the lest results, we presume the defendant was below 21 years of age when the accident occurred. La.Rev.Stat. § 32:662(A)(l)(d) establishes that persons under the age of 21 years with a blood-alcohol of 0.02 or more are presumed under the influence of alcohol.
 

 [4]
 

 .Here, too, there seemed to be some confusion at the hearing on the defendant’s motion to suppress whether defendant was also charged with negligent homicide. Prior to taking evidence on the motion to suppress, the State clarified the question and unequivocally stated the defendant was not facing a negligent homicide charge.
 

 [5]
 

 . La. Code Evid. art. 1101 provides in pertinent part:
 

 (1) Except as otherwise provided by legislation, the provisions of this Code shall be applicable to the determination of questions of fact in all contradictory judicial proceedings ....
 

 (2) Furthermore, except as otherwise provided by legislation, Chapter 5 of this Code with respect to testimonial privileges applies to all stages of all actions, cases, and proceedings where there is power to subpoena witnesses, including administrative, juvenile, legislative, military courts-martial, grand jury, arbitration, medical re
 
 *228
 
 view panel, and judicial proceedings, and the proceedings enumerated in Paragraphs B and C of this Article.
 

 B. Limited applicability. Except as otherwise provided by Article 1101(A)(2) and other legislation, in the following proceedings, the principles underlying this Code shall serve as guides to the admissibility of evidence. The specific exclusionary rules and other provisions, however, shall be applied only to the extent that they tend to promote the purposes of the proceeding.
 

 [[Image here]]
 

 (8) Hearings on motions and other summary proceedings involving questions of fact not dispositive of or central to the disposition of the case on the merit s, or to the dismissal of the case, excluding in criminal cases hearings on motions to suppress evidence and hearings to determine mental capacity to proceed.
 

 C. Rules inapplicable. Except as otherwise provided by Article 1101(A)(2) and other legislation, the provisions of this Code shall not apply to the following:
 

 (1) The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the court under Article 104.
 

 La.Code Evid. art. 104, referenced in La. Code Evid. art. 1101(C)(1), provides in pertinent part:
 

 (A) Preliminary questions concerning ... the admissibility of evidence shall be determined by the court ... In making its determination it is not bound by the rules of evidence except those with respect to privileges.
 

 [6]
 

 . The defendant refers to
 
 State v. Hightower,
 
 272 So.2d 363 (La.1973) and
 
 State v. Smith,
 
 392 So.2d 454 (La.1980), two other cases that pre-date our Code of Evidence which also hold that hearsay is admissible in a suppression hearing. Defendant attempts to distinguish these two cases by suggesting that with the adoption of the Louisiana Code of Evi
 
 *229
 
 dence the Legislature changed the law, making these cases no longer relevant. For reasons explained more fully
 
 supra,
 
 we find the Louisiana Code of Evidence did not result in rendering these prior decisions irrelevant.
 

 [7]
 

 . Although albeit without reference to any specific date, Chief Ambeau also testified that “[w]e had a warrant signed. Her dad brought her in, and I Mirandized her, brought her to jail, booked her in jail.” Trial Tr. at 44. Accordingly, considering the fact that the results of the blood test were not available for a few days after the accident, it appears the defendant was released from the hospital after giving her blood sample, and then she later surrendered to the police on some unspecified date.
 

 [8]
 

 . Subsequent to the accident and initiation of prosecution in the present case, the Legislature amended La.Rev.Stat. § 32:664.2008 La. Acts No. 492, § l(eff. June 25, 2008) and No. 536, § 1 (eff. June 30, 2008). It now provides, in pertinent part:
 

 Chemical analyses of the person's blood, urine, breath, or other bodily substance, to be considered valid under the provisions of this Part, shall have been performed according to methods approved and promulgated by the Department of Public Safety and Corrections and performed by an individual possessing a valid permit issued by said department for the purposes set forth in this Part.
 

 The Legislature further added paragraph (C) which
 
 now
 
 provides:
 

 Issuance of a permit to such a certified individual or laboratory makes all laboratory forensic test results conducted on a person's blood, urine, or other bodily substance by such individual or laboratory valid under the provisions of this Part, and admissible and competent evidence of intoxication in any court of law.