STATE OF LOUISIANA
v.
CALLAN E. GILL.
No. 2009 KA 2003.
Court of Appeals of Louisiana, First Circuit.
March 26, 2010.
Not Designated for Publication.
HON. WALTER P. REED, District Attorney Covington, LA KATHRYN W. LANDRY, Assistant District Attorney Baton Rouge, LA Attorneys for State of Louisiana.
FRANK SLOAN Mandeville, LA Attorney for Defendant-Appellant Callan E. Gill
Before: CARTER, C.J., GUIDRY, AND PETTIGREW, JJ.
PETTIGREW, Judge.
The defendant, Callan E. Gill, was charged by bill of information with first degree vehicular negligent injuring, a violation of La. R.S. 14:39.2. The defendant entered a plea of not guilty. After a trial by jury, the defendant was found guilty as charged. The defendant was adjudicated a second felony habitual offender and sentenced to ten years imprisonment at hard labor without the benefit of probation or suspension of sentence. The defendant now appeals, assigning error to the trial court's denial of the motion to suppress her confession and requesting that an error in the minute entry regarding her sentence be corrected. For the following reasons, we affirm the conviction, habitual offender adjudication, and the sentence, and we remand for amendment of the sentencing minute entry.

STATEMENT OF FACTS
On the evening of May 25, 2008, just as it began to get dark, the victim, Ashlee Stokes, was driving a convertible Mustang on Fish Hatchery Road in Mandeville when the vehicle being driven by the defendant entered her travel lane, causing a head-on collision. Stokes was fifteen years of age at the time of the accident and had a driver's learning permit. The licensed owner of the vehicle, Kerry Lindsay, was a passenger of the vehicle at the time. According to the Scientific Analysis Report from the Louisiana State Police Crime Laboratory, the defendant had a .27 grams percent blood alcohol level on the night of the offense.
The victim was taken to the Lakeview Regional Medical Center where she was examined by Dr. Scott Lacaste (expert in emergency medicine). The victim suffered injuries to her head and neck including a subdural hematoma (blood accumulating around the brain and inside the skull) causing brain damage, a fractured skull, and a fracture to the first vertebrae of the neck. Stokes was transferred to the Trauma Center at University Hospital in New Orleans with the expectation of permanent significant impairment.

ASSIGNMENT OF ERROR NUMBER ONE
In her first assignment of error, the defendant contends that the only evidence that she was driving presented by the State at the trial in this matter consisted of her admission to a Louisiana State Trooper. The defendant notes that she was advised of her Miranda rights after the admission was made. The defendant contends that there is nothing in the record to suggest that the State Troopers were uncertain as to whether the defendant was the driver of the vehicle involved in the accident, noting that it appeared that she was the only person questioned. The defendant further notes that there was no testimony that she would have been allowed to leave the hospital where she was interviewed and that there was virtually no break between the initial questioning, the Miranda warnings, and the subsequent interview wherein she initially admitted to operating a motor vehicle but recanted and stated that she was intoxicated. The defendant concludes that she was not advised of her Miranda rights prior to being informally questioned about an essential element of the crime, whether she was driving. Thus, the defendant argues that the trial court erred and/or abused its discretion in denying the motion to suppress confession.
Pursuant to La. R.S. 15:451, before a purported confession can be introduced in evidence, it must be affirmatively shown to be free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. It must also be established that an accused who makes a confession during custodial interrogation was first advised of his/her Miranda rights. State v. Plain, 99-1112, p. 5 (La. App. 1 Cir. 2/18/00), 752 So.2d 337, 342. The State must specifically rebut a defendant's specific allegations of police misconduct in eliciting a confession. State v. Thomas, 461 So.2d 1253, 1256 (La. App. 1 Cir. 1984), writ denied, 464 So.2d 1375 (La. 1985).
The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. State v. Sanford, 569 So.2d 147, 150 (La. App. 1 Cir. 1990), writ denied, 623 So.2d 1299 (La. 1993). Whether a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case. State v. Benoit, 440 So.2d 129, 131 (La. 1983). The trial court must consider the totality of the circumstances in deciding whether a confession is admissible. State v. Hernandez, 432 So.2d 350, 352 (La. App. 1 Cir. 1983). Testimony of the interviewing police officer alone may be sufficient to prove a defendant's statements were freely and voluntarily given. State v. Maten, XXXX-XXXX, p. 12 (La. App. 1 Cir. 3/24/05), 899 So.2d 711, 721, writ denied, XXXX-XXXX (La. 1/27/06), 922 So.2d 544.
The obligation to provide Miranda warnings attaches only when a person is questioned by law enforcement after they have been taken "into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); State v. Payne, XXXX-XXXX, p. 7 (La. 12/4/02), 833 So.2d 927, 934. In determining whether an individual is in custody for purposes of Miranda, courts must consider all of the circumstances surrounding the interrogation, and "the ultimate inquiry is simply whether there [was] a `formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 1528-29, 128 L.Ed.2d 293 (1994) (per curiam). This determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury, 511 U.S. at 323, 114 S.Ct. at 1529. That an individual is a suspect of the police conducting a criminal investigation therefore does not determine whether the interrogation occurs in a custodial context for purposes of Miranda, and "[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest." Stansbury, 511 U.S. at 325, 114 S.Ct. at 1530. Accordingly, "an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave." Stansbury, 511 U.S. at 325, 114 S.Ct. at 1530. See State v. Saltzman, XXXX-XXXX, p. 2 (La. 4/8/04), 871 So.2d 1087, 1088 (per curiam).
In support of her contention that the trial court erred, the defendant relies on Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 LEd.2d 643 (2004). In Seibert, the Court addressed the police protocol involving custodial interrogation where no warnings of the rights to silence and counsel were given to the suspect until interrogation produced a confession, and where following such a confession, the interrogating officer would provide the Miranda warnings and lead the suspect to cover the same ground a second time, with the second statement recorded. The plurality Seibert Court held that because this midstream recitation of warnings after interrogation and unwarned confession could not effectively comply with the Miranda constitutional requirement, a statement repeated after a warning in such circumstances is inadmissible. Seibert, 542 U.S. at 604-06, 124 S.Ct. at 2605-07.
Herein, Louisiana State Trooper Dustin Dwight was dispatched to the scene of the accident. Shortly after his arrival at the scene, he was redirected to the hospital to do a follow-up with the individuals involved in the crash. At the hearing on the motion to suppress, Trooper Dwight testified that he made contact with trie defendant when he arrived at the hospital. When asked if he asked the defendant any questions, Trooper Dwight stated, "Identified her as the driver of the vehicle involved in the crash on Fish Hatchery Road." Trooper Dwight answered, "Yes, sir" when asked if it was just basic information. Trooper Dwight further testified that he immediately detected a strong odor of alcoholic beverage on the defendant's breath, observed her bloodshot eyes, noticed at times her speech was slurred, and noted that she was extremely belligerent. Trooper Dwight placed the defendant under arrest for DWI and immediately advised the defendant of her rights related to the chemical tests for intoxication and her Miranda rights. Trooper Dwight testified that he did not threaten or use any force against the defendant, offer any inducements, or make any promises. Trooper Dwight's trial testimony was consistent with his testimony at the hearing. Louisiana State Trooper Patrick Dunn was present at the time. He testified that he read the defendant a notice to withdraw blood form. Trooper Dunn witnessed blood being drawn from the defendant.
Louisiana State Trooper Kevin Allen spoke to the defendant after Trooper Dwight read her Miranda rights. Trooper Allen asked the defendant if she remembered and understood her rights and she stated that she did. Trooper Allen stated that the defendant was responsive to questioning but was combative with him and the staff. The defendant indicated that she had been drinking alcohol before the accident and that she was driving. Trooper Allen's trial testimony was consistent with his testimony at the hearing. After admitting that she consumed alcohol and operated a vehicle, the defendant partially recanted by stating, "I wasn't driving, but I was intoxicated." The defendant then again admitted being involved in the accident. She stated that she had not consumed any alcohol after the accident. Trooper Allen conducted a field sobriety test, found the defendant to be extremely impaired, and wrote her a ticket.
Miranda warnings are not required when officers conduct preliminary, non-custodial, on-the-scene questioning to determine whether a crime has been committed, unless the accused is subjected to arrest or a significant restraint short of formal arrest. State v. Shirley, 2008-2106, p. 8 (La. 5/5/09), 10 So.3d 224, 229. See also State v. King, 563 So.2d 449, 454 (La. App. 1 Cir.), writ denied, 567 So.2d 610 (La. 1990). In Shirley, the Louisiana Supreme Court held that the defendant at the scene of a fatal one-car accident in which the passenger of her vehicle was killed was not in custody for Miranda purposes when she made statements to the officer at a time when she had not been placed in handcuffs before she was taken by ambulance to the hospital. Shirley, 2008-2106 at 9-10, 10 So.3d at 230. Based on the circumstances, the defendant's statements were made during the preliminary stages of the investigation into the accident.
Similarly, herein the defendant was not in police custody at the time of the initial statements. There was no testimony that her freedom of movement was restricted in any manner prior to the time she was advised of her rights. The defendant made the statements in question during preliminary questioning. As soon as the defendant identified herself as the driver, she was read her Miranda rights. Under these circumstances, we find no error in the trial court's denial of the defendant's motion to suppress her statements. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In the second assignment of error, the defendant correctly asserts that the minutes misstate the sentence imposed by the trial court. As reflected by the sentencing transcript, the trial court imposed the instant sentence of ten years imprisonment at hard labor without the benefit of probation or suspension of sentence. The trial court did not impose a restriction on parole. However, the minutes state that the sentence was imposed without the benefit of parole or suspension of sentence. The transcript prevails over the minute entry where there is a discrepancy. State v. Lynch, 441 So.2d 732, 734 (La. 1983). The defendant requests that the minute entry be amended, and the State does not oppose the request. We hereby remand for correction of the sentencing minute entry and, if necessary, the commitment order to reflect that the instant sentence is ten years imprisonment at hard labor without the benefit of probation or suspension of sentence, as set forth in the sentencing transcript.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED; REMANDED FOR AMENDMENT OF SENTENCING MINUTE ENTRY.