STATE OF LOUISIANA         *        NO. 2025-K-0084

VERSUS                *

JAMARKUS ARDOIN       *       COURT OF APPEAL

                        FOURTH CIRCUIT

                    * 

                        STATE OF LOUISIANA

             * * * * * * *


APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 557-822, SECTION "J"
Honorable Darryl A. Derbigny, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

Jason R. Williams
District Attorney
Parish of Orleans
Brad Scott
Assistant District Attorney
District Attorney's Office
619 S. White Street
New Orleans, LA 70119

       COUNSEL FOR STATE OF LOUISIANA/RELATOR

Jacob McCarty
Orleans Public Defenders
2601 Tulane Avenue, Seventh Floor
New Orleans, LA 70117

       COUNSEL FOR DEFENDANT/RESPONDENT

                 **WRIT GRANTED; REVERSED IN PART;**
                 **AND REMANDED WITH INSTRUCTIONS**
                 **February 26, 2025**

Relator—the State of Louisiana—seeks review of the district court's January 15, 2025 ruling, granting the motion to suppress evidence and statement filed by defendant—Jamarkus Ardoin—and finding no probable cause. We grant the State's writ, and we reverse the district court's rulings suppressing the evidence and finding no probable cause. But, we do not disturb the portion of ruling granting the motion to suppress statement; rather, we remand with instructions that the district court revisit that issue.

**Factual and Procedural Background**

In April 2023, the State charged Mr. Ardoin with illegal carrying of a weapon while in the possession of a controlled dangerous substance. In June 2023, Mr. Ardoin filed an omnibus motion for discovery; to preserve evidence; for suppression of statement, evidence and identification; and for a preliminary examination. Following a hearing conducted in January 2025, the district court granted the motion to suppress evidence and statement and found no probable cause. This writ followed.

At the hearing, veteran New Orleans Police Department ("NOPD") officer John Huntington testified that he was on proactive patrol, on November 26, 2022,

1

on Bourbon Promenade when he arrested Mr. Ardoin. The State then introduced bodycam footage depicting the stop and the arrest. Officer Huntington explained that he conducted the stop because he was told that Mr. Ardoin was in possession of a concealed firearm. Continuing, Officer Huntington testified that "[t]he State Police were monitoring the [Real Time Crime Center ("RTCC")] cameras, alerted us, via radio, to [Mr. Ardoin] who was wearing a bright multi-colored jacket. Myself and my partner were on the corner with our lieutenant. We saw the individual. My lieutenant saw the firearm and we made the stop." The officers also recovered Adderall (containing methamphetamine) from Mr. Ardoin after seizing the concealed weapon.

On cross-examination, Officer Huntington conceded that he did not personally view the RTCC footage that allegedly depicted Mr. Ardoin carrying a concealed weapon. The state police officers monitoring the RTCC footage apparently described the suspect as a black male, wearing a multi-colored hoodie in the 300 block of Bourbon Street. After being alerted by his Lieutenant to Mr. Ardoin, who apparently matched the description, Officer Huntington conceded that he did not witness Mr. Ardoin "screaming," "making a scene," "consuming drugs" or "waiving [sic] a gun around." Officer Huntington also conceded that it was crowded on that block of Bourbon Street when he made the stop and that almost everybody was wearing a jacket that night. Finally, he conceded that he did not know the state police troopers who were monitoring the RTCC that night and that he failed to identify those troopers in his police report.

On redirect, Officer Huntington provided additional details relating the circumstances precipitating the stop; he testified as follows:

> I did not see anything. My lieutenant is the one who saw the bulge in the defendant's pants, that [sic] he stated "That's him with the firearm[.]" We were already looking for a Black male in a multi-colored jacket, who State police believed was in possession of a firearm. My lieutenant was the one that made the spot.

Finally, Officer Huntington testified that less than ten minutes elapsed between the time he detained Mr. Ardoin for possession of the firearm and his discovery of the narcotic pills at the police station approximately a block away.

Bodycam footage depicts the officers conducting the stop of Mr. Ardoin—who is wearing a very colorful and distinctive jacket—and immediately removing a firearm from his waistband. In response to the officers' inquiries, Mr. Ardoin claims that the weapon belongs to his girlfriend (who is licensed to carry the gun) and admits that he does not possess a concealed-carry permit. Mr. Ardoin is then transported to the nearby NOPD station. At approximately eight minutes into the footage, Mr. Ardoin is administered *Miranda* warnings; and he continues to explain that the weapon belongs to his girlfriend who had dropped it.

At the hearing, defense counsel argued that the officer lacked reasonable suspicion to conduct the stop because of testimony reflecting "that this officer did not personally observe any facts supporting [p]robable cause." For this reason, defense counsel maintained that there existed no basis for stopping Mr. Ardoin and that the firearm seized derivative of the allegedly suspicion-less stop should be excluded. Defense counsel then turned to Mr. Ardoin's statements, arguing that there was "zero testimony or evidence in the [r]ecord that" Mr. Ardoin had been administered *Miranda* warnings. The State responded and requested that the matter be left open because it was unaware that the admissibility of the statements would be addressed at the hearing. Defense counsel responded that the "[t]he state can't mess up its case and then ask to reopen [m]otions."

The district court then issued its ruling in open court as follows:

> I will not agree to reopen the [h]earing and keep it open in order to elicit additional testimony in favor, or in support of that position by the [s]tate.

> Instead, I'm prepared to [r]ule on [s]uppression of [s]tatement, [p]robable [c]ause, as well as any other issues relative to [p]re-trial [m]otions that I think are appropriate. I think I'm going to address that particular argument. I'm ready to proceed as to the balance of the [h]earing, based upon what the testimony showed. The [c]ourt will find [n]o [p]robable [c]ause as the arrest of this defendant. I'll also grant the [m]otion to suppress [s]tatement, also the [m]otion to [s]uppress [e]vidence. I'll note the [s]tate's objection.

**Discussion**

Both the United States and Louisiana Constitutions recognize the rights of persons to be secure in their person, property, and effects, and to be free from unreasonable searches and seizures. U.S. Const. amend. IV; La. Const. art. I § 5.9. Reasonableness dictates the balance between legitimate law enforcement concerns and an individual's protected privacy interests. *State v. McClendon*, 13-1454, p. 4 (La. App. 4 Cir. 1/30/14), 133 So.3d 239, 244 (citation omitted). A search or seizure conducted without a warrant is per se unreasonable unless it can be justified by one of the narrowly drawn exceptions to the warrant requirement. *State v. Surtain*, 09-1835, p. 7 (La. 3/16/10), 31 So.3d 1037, 1043. A "reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights." *State v. Guillot*, 12-0726, p. 4 (La. App. 4 Cir. 4/17/13), 115 So.3d 624, 628 (citations omitted).

La. C.Cr.P. art. 215.1 (A) provides in pertinent part:

> A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to

4

commit an offense and may demand of him his name, address, and an explanation of his actions.[1]

The reasonable suspicion standard required for an investigatory stop "is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).

> In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy it entails and consider the totality of the circumstances in determining whether reasonable suspicion exists. The detaining officers must have knowledge of specific articulable facts, which, if taken together with rational inferences from those facts, warrant the stop. The officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable, and deference should be given to the experience of the officers present at the time of the incident.

*State v. Marzett*, 09-1080, pp. 5-6 (La. App. 4 Cir. 6/9/10), 40 So.3d 1204, 1208 (internal citation omitted); *see also State v. Pratt*, 08-1819, pp. 2-3 (La. 9/4/09), 16 So.3d 1163, 1165 (internal quotations and citations omitted) (observing that "[p]olice may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person"")."Furthermore, a reviewing court must give due weight to factual inferences drawn by resident judges and local law enforcement officers." *State v. Morgan*, 09-2352, p. 5 (La. 3/15/11), 59 So.3d 403, 406 (citation omitted).

---

[1] *See also Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968) (observing that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him").

Additionally, a warrantless search incident to a valid arrest may be conducted on the person of the arrestee in order to remove any weapons that could be used to endanger the officer's safety, and to seize any evidence to prevent its concealment or destruction. *Chimel v. California*, 395 U.S. 752, 768, 89 S.Ct. 2034, 2043, 23 L.Ed.2d 685 (1969); *State v. Anthony*, 98-0406, pp. 199-20 (La. 4/11/00), 776 So.2d 376, 389.

Finally, in *State v. Caliste*, 12-1548, p. 7 n.7 (La. App. 4 Cir. 6/14/13), 131 So.3d 902, 907 (alteration in original), this Court recognized that "the collective knowledge doctrine, or 'fellow officer rule[,'] provides that in certain circumstances, several officers' observations can be aggregated to establish the probable cause needed for a warrantless search or seizure, or to obtain a search or arrest warrant under the Fourth Amendment." Relatedly, this Court has recognized that "hearsay testimony is admissible in a suppression hearing." *State v. Bentley*, 12-1106, p. 8 (La. App. 4 Cir. 5/15/13), 116 So.3d 891, 896 (citations omitted); *see also State v. Shirley,* 08-2106, pp. 5-7 (La. 5/5/09), 10 So.3d 224, 228-29 (observing that hearsay rules do not apply in a hearing on a motion to suppress evidence).

Applying these principles here, we conclude that the officer possessed reasonable suspicion to conduct the stop and frisk of Mr. Ardoin that yielded the (then)[2] illegally-concealed weapon. The basis for our conclusion is the collective knowledge of the officers, including that provided by the state police officers monitoring the RTCC footage coupled with that provided by Officer Huntington's lieutenant who observed the "bulge" in Mr. Ardoin's waistband. *See State v.*

---

[2] The permitless concealed carrying of firearms became legal in New Orleans on August 1, 2024. *See https://www.wdsu.com/article/new-louisiana-concealed-carry-law-goes-into-effect/61508844.* This stop and arrest occurred in November 2022.

*Dupart,* 19-0521, pp. 13-14 (La. App. 4 Cir. 10/16/19), 280 So.3d 1214, 1223-24 (observing that police officers possessed reasonable suspicion to justify the investigatory stop of the defendant when they observed a large bulge in his shoulder sling bag which led them to believe that the defendant possessed a firearm). Certainly, Officer Huntington could not have been expected either "to turn a blind eye to the circumstances," or to ignore what both the state police officers monitoring RTCC footage and his lieutenant described as what they suspected was an illegally-concealed firearm in Mr. Ardoin's waistband. *State v. Fearheiley*, 08-0307, p. 2 (La. 4/18/08), 979 So.2d 487, 489; *see also State v. Greenberry*, 14-1126, p. 1 (La. 4/10/15), 164 So.3d 824, 825 (observing that "[a] reviewing court should give deference to the inferences and deductions of a trained police officer 'that might well elude an untrained person'") (citation omitted).

For these reasons, we find persuasive the State's argument that the officer possessed reasonable suspicion to conduct an investigatory stop based on information learned from a remote officer monitoring RTCC footage that Mr. Ardoin was armed and the testifying officer's supervisor's live observation of a bulge in Mr. Ardoin's waistband. We, thus, reverse the portion of the district court's ruling suppressing the evidence seized resulting from the stop. Given the legal stop of Mr. Ardoin and seizure of the (then) illegally-concealed firearm, the district court's determination of no probable cause is likewise reversed. But, we decline to disturb the district court's ruling suppressing Mr. Ardoin's statement.

The bodycam footage reflects that *Miranda* warnings were not provided to Mr. Ardoin before he made the statement admitting that he did not possess a concealed-carry permit. Although that admission was seemingly provided in response to the officer's inquiry, it is unclear whether Mr. Ardoin was subject to a

custodial interrogation at that juncture such that the requirement for *Miranda* warnings attached.[3] Nonetheless, the State's complaint at the hearing and in its writ application was not so much that the district court erred as a substantive matter when it excluded the statement, but rather that the State was not on notice that the issue would be considered at the hearing. Given the circumstances presented here, we decline to disturb the district court's ruling regarding the statement; rather, we remand to the district court for reconsideration of the admissibility of the statement.

**DECREE**

For the foregoing reasons, the State's writ application is granted. The district court's January 15, 2025 ruling is reversed insofar as the granting of the motion to suppress evidence and finding of no probable cause. The district court's ruling is not disturbed insofar as the granting of the motion to suppress the statement; rather, this matter is remanded with instructions that the district court revisit the issue of the admissibility of the statement.

**WRIT GRANTED; REVERSED IN PART; REMANDED WITH INSTRUCTIONS**

---

[3] "*Miranda* only applies if three conditions are met: (1) the defendant is in 'custody' or significantly deprived of freedom, (2) there is an 'interrogation,' and (3) the interrogation is conducted by a 'law enforcement officer' or someone acting as their agent." *State v. Bernard*, 09-1178, p. 5 (La. 3/16/10), 31 So.3d 1025, 1029. "Custody is decided by two distinct inquiries: an objective assessment of the circumstances surrounding the interrogation to determine whether there is a formal arrest or restraint on freedom of the degree associated with formal arrest; and, second, an evaluation of how a reasonable person in the position of the interviewee would gauge the breadth of his freedom of action." *State v. Hankton*, 12-0466, p. 13 (La. App. 4 Cir. 4/30/14), 140 So.3d 398, 407 (citations omitted). "As such, *Miranda* warnings are not required when officers conduct preliminary, non-custodial, on-the-scene questioning to determine whether a crime has been committed, unless the accused is subjected to arrest or a significant restraint short of formal arrest." *Shirley*, 08-2106, p. 8, 10 So.3d at 229 (citations omitted).