1KIRBY, Judge.

STATEMENT OF THE CASE

On August 15, 2002 the State filed a bill of information charging the defendants with violations of La. R.S. 40:966 relative to possession of heroin with the intent to distribute (Alsando Dowell and Darryl Clay) and simple possession of heroin (Travis Johnson). The defendants all entered not guilty pleas at arraignment. On May 7, 2003 the motion to suppress hearing and preliminary hearing were held. As to defendant Dowell the court found insufficient probable cause to sustain the charge, noting that no motion to suppress pertained to him. As to Johnson the court granted the motion to suppress evidence and found insufficient probable cause to sustain the charge. As to Clay, the court granted the motion to suppress only as to items taken from his person. The court found sufficient probable cause to bind Clay over for trial. The State objected to all of the rulings which were adverse to it and gave notice of intent to seek writs. The court set a return date for June 5, 2003 which was extended on June 4, 2003 to June 20, 2003. The court stayed the trial pending the writ application.

2MOTION TO DISMISS:

The defense has filed a motion to dismiss the writ application arguing that the State did not property file its extension of the writ return date. We find the writ application to have been timely filed because it is post marked on the last day of an extension granted by the trial court. The mover asserts that the motion for an extension of time was not filed in the District Court and is not a part of the record of that court. However, there is attached to the writ application an order granting the Stated until June 20th to submit its writ application. We therefore overrule the motion to dismiss.

STATEMENT OF THE FACTS

At the motion hearing, the parties stipulated that Sergeant Lampard, if called to testify, would state that he was the affiant on a search warrant used to search Apartment A, 3409 Martin Luther King Blvd., but he did not actually participate in the search, detention, or arrest of the defendants. The search warrant application alleged that, within the prior twenty-four hours, Sgt. Lampard had been contacted by a documented confidential informant. The C.I. stated that a black male named Darryl was selling retail quantities of heroin from the apartment. The C.I. offered to make a controlled buy from Darryl. Sgt. Lampard, with the assistance of Officer James Foucha, proceeded with the standard procedure for a controlled purchase, including searching the C.I., providing money, and setting up a surveillance location. As the officers watched, the informant approached the front steps of 3409 *1101 Martin Luther King. The C.I. met a black male wearing a white t-shirt with a red logo and a pair of blue jean shorts. The two had a discussion; the C.I. handed the male the currency, and the targeted subject walked into the building. He | .¡returned a couple of minutes later and gave the C.I. a small object. The informant proceeded to the prearranged meeting place where he gave the officers a foil containing an off-white powder. Sgt. Lampard then proceeded to apply for the search warrant.
Officer James Foucha was the first police officer to testify at the motion hearing. He stated that he assisted the surveillance operation during the controlled buy from the targeted apartment. Officer Foucha testified that he observed the transaction between the C.I. and the seller, who was later identified as Darryl Clay, one of the defendants herein. Officer Foucha maintained the surveillance while Sgt. Lampard applied for the search warrant. When the warrant had been approved, Officer Fou-cha watched other officers detain the three individuals, the defendants herein, who were in front of the building. Once the scene was secure, Officer Foucha left; he did not participate in the detention and arrest of the defendants or the search of the apartment.
During a brief cross-examination by counsel for defendants Dowell and Johnson, Officer Foucha testified that those defendants were sitting on the porch during the incident. He did not see them participate in the transaction which occurred between the C.I. and Darryl Clay.
Counsel for the defendant Darryl Clay questioned Officer Foucha extensively about the physical configuration of the building at 3409 Martin Luther King Blvd. and the officer’s ability to view Apartment A. He established that there are a total of four apartments in the building; Apartment A was one of two on the first floor. Officer Foucha explained that it was possible to see Clay enter the hallway and turn toward the left, the side of the floor where Apartment A was located.
1 ¿Officer Mark Amos testified that he was with the support unit for the investigation. Once he was notified by radio that the search warrant had been issued, he and other officers moved into the 3400 block of Martin Luther King Blvd. They stopped the defendants, who were sitting on the porch of the building, obtained identification from each, and conducted frisks. He stated that his frisk of the defendant Travis Johnson resulted in the seizure of a small foil of heroin. After the frisks were completed, he seized a set of keys from Darryl Clay and used them to gain entry into the targeted apartment. A search there resulted in the seizure of heroin, firearms, packaging material, a scale, and two pieces of mail containing the name of defendant Alsando Dowell. At that point, the officers placed Clay and Dowell under formal arrest. Officer Amos further testified that, to his knowledge, nothing was seized from the person of Dowell, but that a plastic bag containing seventeen foils of heroin was found on Clay’s person.
During cross-examination, Officer Amos conceded that, at the time he arrived with his fellow officers to execute the warrant, they had no information that Johnson and Dowell had any connection with the targeted apartment or the drug transaction referenced in the search warrant application. Officer Amos stated that they were detained solely because they were on the porch when the drug transaction had been completed. No weapons were found on either man. However, as to the foil found on Johnson, Officer Amos testified that it was sticking out of the edge of Johnson’s waistband; it was not found during the actual weapons frisk. Officer Amos con *1102 ceded that neither Dowell nor Johnson engaged in any suspicious or threatening behavior; rather he viewed them as bystanders who were “in the wrong place at the wrong time.”
1 .^Officer Amos further testified that, although two pieces of mail were found with Dowell’s name on them, he did not find out who leased the apartment.
Counsel for Darryl Clay cross-examined Officer Amos regarding the police report and search warrant return which he prepared. Officer Amos conceded that the search warrant return inventory reflected that two bags of heroin were seized from the residence; one contained twenty-two foils and the other seventeen, even though he had testified that the seventeen foils were seized from Clay’s person. Officer Amos conceded that he was asked by the district attorney to make some corrections to his report, but he did not clarify that aspect of it.
In further cross-examination, Officer Amos testified that he had been provided with a description of the seller; this had been relayed by Officer Foucha via radio. Clay was handcuffed and the keys seized based on the fact that he matched that description.

DISCUSSION

The State is before this Court complaining that the trial court erred when it found no probable cause for Dowell’s arrest, found no probable cause for Johnson’s arrest and suppressed the foil of heroin seized from him, and suppressed the key seized from Clay.[1] The defense did not argue, and the court did not find, that there was any basis to suppress the evidence found inside the apartment and seized pursuant to the search warrant.
Probable cause to arrest exists when the facts and circumstances known to the officer are sufficient to justify a man of ordinary caution to believe the person |fito be arrested has committed a crime. State v. Matthews, 94-2112, p. 5 (La.App. 4 Cir. 4/26/95), 654 So.2d 868, 871. Because the defendants’ arrests and seizure of evidence from their persons were without a warrant, the State bears the burden of proof. La.C.Cr.P. art. 703.
This Court has held that there is reasonable suspicion to stop and frisk a person who is in the company of another during a drug transaction. See State v. Green, 586 So.2d 639 (La.App. 4 Cir.1991), in which police officers on patrol in a marked vehicle received a call of a drug deal. The officers parked their vehicle out of sight and walked to the location so that they would not be seen. When they were within approximately twelve feet, they observed the defendant standing with a man named Jones. Jones was approached by another person, and a drug transaction occurred. The defendant did not participate in the transaction. Nevertheless, the officers approached all of the men and placed them against a car in order to do a frisk for weapons. The drug buyer had a rock of cocaine concealed in his hand. The defendant, while his hands were on the car, opened his right hand and dropped a rock-like substance. Green was then placed under arrest. The trial court suppressed the evidence. This Court reversed, stating:
Because the defendant was with Williams and Jones during the drug purchase in a high drug trafficking area, the officers were justified under these circumstances to conduct a pat-down *1103 search of the three men under Terry v. Ohio, 892 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See State v. Landry, 393 So.2d 713 (La.1981). Therefore, the seizure of the cocaine which the defendant abandoned because of that justified pat-down search was legal.
State v. Green, 586 So.2d at 640. See also State v. Eddie, 96-2787 (La.App. 4 Cir. 4/30/97), 694 So.2d 503 (investigatory stop lawful where defendant was one of three individuals present when a drug transaction occurred, and he fled when the police J^appeared at the scene of the transaction); and State v. Robinson, 2000-1050 (La.App. 4 Cir. 4/11/01), 784 So.2d 781, writ granted on other grounds 2002-1373 (La.4/26/02), 816 So.2d 846, (defendant in car with a person in possession of drugs could be frisked for weapons).
However, this Court found that the police did not have probable cause to arrest the driver of a vehicle solely because a person involved in a drug transaction entered the vehicle immediately after concluding a drug sale to an undercover officer. State v. Broussard, 99-2848 (La.App. 4 Cir. 10/4/00), 769 So.2d 1257, rev’d on other grounds, 2000-3230 (La.5/24/02), 816 So.2d 1284.[2] The Court noted that, “although it is somewhat arguable that the appellant’s proximity to the undercover drug sale might have given the officers reasonable suspicion to stop the appellant, these circumstances did not constitute probable cause to believe the appellant was involved in Allen’s and Hills’ drug operation in any way.” Id. p. 9, 769 So.2d at 1261.
As to both Johnson and Dowell, their presence during the drug transaction between Clay and the confidential informant provided a basis for an investigatory stop. Officer Amos testified that he frisked them for the officers’ safety. During the interaction, but not as a direct result of the frisk, Officer Amos saw a foil protruding from Johnson’s waistband. In State v. Smith, 96-2161 p. 3 (La.App. 4 Cir. 6/3/98), 715 So.2d 547, 549, this Court discussed the plain view exception:
In order for an object to be lawfully seized pursuant to the “plain view” exception to the Fourth Amendment, “(1) there must be a prior justification for the intrusion into a protected area; (2) in the course of which the evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection |athat the items are evidence or contraband.” State v. Hernandez, 410 So.2d 1381, 1383 (La.1982); State v. Tate, 623 So.2d 908, 917 (La.App. 4 Cir.), writ denied 629 So.2d 1126 and 1140 (La.1993). In Tate, this court further noted: “In Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the Court held that evidence found in plain view need not have been found “inadvertently” in order to fall within this exception to the warrant requirement, although in most cases evidence seized pursuant to this exception will have been discovered inadvertently.” Tate at 917.
Here, the officers had confirmed information that narcotics sales were occurring from the location. Johnson had been present while such sales were occurring. Officer Amos saw an item which was consistent with such sales during a valid investigatory stop. He was entitled to seize it and arrest Johnson for the offense of simple possession. The trial court erred in finding that there was no basis for the seizure and arrest as to Johnson and *1104 we reverse the judgment below as to Johnson.
The issue as to Dowell is more difficult. No evidence of involvement in the drug sale was found on his person. He did not flee. No one testified that he acted in a suspicious manner. The informant had not provided any information relative to him, but rather only as to Darryl Clay. Dowell did not have keys to the apartment where the drugs were located. The sole basis for his arrest was the discovery of two pieces of mail inside the apartment which had his name on them. Those pieces of mail were not described with any particularity at the hearing, nor did Officer Amos or any other officer testify as to where in the apartment the mail was located. Officer Amos conceded that the police had made no attempt to determine who was the lessee of the apartment. The mail was not introduced at the hearing.
In State v. Toups, 01-1875, pp. 3-4 (La.10/15/02), 833 So.2d 910, the Court discussed the law on constructive possession:
A person may be in constructive possession of a | adrug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control it.... Guilty knowledge is an essential ingredient of the crime of unlawful possession of an illegal drug. State v. Trahan, 425 So.2d 1222 (La.1983) (citing State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (1971)). However, it is well settled that the mere presence in an area where drugs are located or the mere association with one possessing drugs does not constitute constructive possession. State v. Harris, 94-0970 (La.12/8/94), 647 So.2d 337; State v. Bell, 566 So.2d 959 (La.1990).
A determination of whether there is “possession” sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. State v. Hughes, 587 So.2d 31, 43 (La.App. 2 Cir.1991), writ denied, 590 So.2d 1197 (La.1992); see also Bujol v. Cain, 713 F.2d 112 (5 Cir.1983), cert. denied, 464 U.S. 1049, 104 S.Ct. 726, 79 L.Ed.2d 187 (1984) (listing above factors as well as a sixth factor: “evidence that the area was frequented by drug users”).
In State v. Anderson, 36,969 (La.App. 2 Cir. 4/9/03), 842 So.2d 1222, the Court found that the evidence was sufficient to establish the defendant’s constructive possession of contraband found in a residence pursuant to a search warrant. The State introduced evidence of the defendant’s ownership of the residence, utility bills, uniforms with the defendant’s name on them, and photographs of the defendant.
At this time in the instant case, the State is not required to prove beyond a reasonable doubt that Dowell was in constructive possession of the drugs found in the apartment. At the preliminary hearing, the State was only required to prove that there is probable cause to believe that Dowell was in constructive possession. |inHowever, it does not appear that the trial court was manifestly erroneous in concluding that the State had failed in its burden. No one saw Dowell entering the apartment, nor did he have keys to it. The police were not given any information that Dowell was involved in the drug traf *1105 ficking occurring from Apartment A. The State produced no evidence to show that Dowell had a lessee’s interest in the apartment.[3] The mail was not identified as clearly reflecting that Dowell exercised dominion and control over the apartment, for example, current utility bills. Thus, we affirm this aspect of the trial court’s ruling.
The remaining issue in this writ application is whether the trial court erred when it suppressed evidence seized from the person of Darryl Clay. The trial court at the motion hearing explained that it was suppressing the evidence seized from Clay’s person because the police were only in possession of a search warrant, not an arrest warrant, and that “[t]hey did not independently observe any criminal activity that they alleged the defendant was engaged in at the time of his arrest. Nor was there any testimony regarding any particular criminal activity ... that would have justified anything other than the stop and frisk, which is indeed authorized.... ”
La.C.Cr.P. art. 213 authorizes a peace officer to make an arrest without a warrant when the person to be arrested has committed an offense in his presence; has committed a felony, although not in the presence of the officer; or where the officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer. This Court set forth the Inapplicable law on probable cause for an arrest in State v. Pham, 2001-2199 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, as follows:
It is not a prerequisite for the existence of probable cause to make an arrest that the police officers know at the time of the arrest that the particular crime has definitely been committed; it is sufficient that it is reasonably probable that the crime has been committed under the totality of the known circumstances. An arresting officer need only have a reasonable basis for believing that his information and conclusions are correct. For an arrest, the law does not require that “reasonable cause to believe” be established by evidence sufficient to convict; the arresting officer need not be convinced beyond a reasonable doubt of the arrested person’s guilt. The standard of reasonable cause to believe is a lesser degree of proof than beyond a reasonable doubt, determined by the setting in which the arrest took place, together with the facts and circumstances known to the arresting officer from which he might draw conclusions warranted by his training and experience.
Probable cause for an arrest must be judged by the probabilities and practical considerations of everyday life in which average people, and particularly average police officers, can be expected to act. The reputation of the area is an articula-ble fact upon which a police officer may legitimately rely. The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or a preponderance standard demands. Deference should be given to the experience of the police who were present at the time of the incident. The fundamental philosophy behind the probable cause requirement of the Fourth Amendment is that common rumor or report is not an adequate basis for the arrest of a person. Police are not required to arrest an individual *1106 at the point at which probable cause for arrest arises.
Pursuant to a lawful arrest, the officer may lawfully conduct a full search of the arrestee and the area within his immediate control for weapons and for evidence of a crime. (Citations omitted).
2001-2199, pp. 5-6, 839 So.2d at 219-220.
In State v. Robertson, 2002-0156 (La.App. 4 Cir. 2/12/03), 840 So.2d 631, police received information from a confidential informant that an individual known as “Red,” who walked with a limp and drove a gray Chevy Corsica, sold cocaine while sitting in front of an abandoned house at the corner of LaSalle and Josephine Streets. The informant also told the officers that Red kept more narcotics inside his residence at 3025 Toledano Street. The next day, one officer went to 3025 Toledano Street, where he observed the gray Chevy Corsica parked in front. He then drove to LaSalle and Josephine Streets and parked nearby. Within ten minutes of Red’s arrival, the gray Chevy Corsica pulled up and parked nearby. Red exited and walked, with a limp, to the rear of an abandoned residence. The officer observed, through binoculars, Red remove a plastic bag from his pants pocket and place it on the sidewalk at the rear of a back shed, then walk over and sit on the steps of the abandoned residence. The officer observed two separate narcotics transactions with two unknown males. In each transaction, unknown males approached Red, engaged him in a brief conversation, and handed the defendant currency. Red walked to the back shed area, retrieved a small object, and returned to give the object to the male. A third male subsequently approached. He and Red walked to the back shed area and retrieved the plastic bag. Red showed the bag to the third male, and removed a small object and gave it to him. This third male placed the object in his sock and sat on a milk crate next to the steps where Red had been sitting. The officer observed this third male conduct a drug transaction as the defendant had done. A female joined this third male, sitting on the steps.
Subsequently, the surveilling officer contacted two other officers, who approached Red, the male and the female, conducted pat-down searches, and | ^informed them they were under investigation for drug violations. This court held that the corroboration of the informant’s information by the first officer’s surveillance gave the detaining officers not only reasonable suspicion to stop Red, but probable cause to arrest him.
In State v. Julian, 2000-1238 (La.App. 4 Cir. 3/14/01), 785 So.2d 872, police received a telephone complaint, presumably anonymous, regarding drug activity at a residence. Police had received numerous complaints concerning that residence. Police set up surveillance, and had been on the scene less than a minute when they observed an individual matching a description given by the caller come out of an alleyway of the residence and speak to another individual, who was holding currency in his hand. After a brief conversation, the first individual removed a plastic object from his right pants pocket, opened it, removed something from it, and handed it to the second individual. The first individual then took currency from the second individual, who walked off. The observing officers radioed other officers, who arrested the first individual and recovered a film container with crack cocaine inside from that individual’s right front pants pocket. On reviewing the seizure, this court stated that the officers not only had reasonable cause to stop the individual, but that the observation of a narcotics transaction also provided probable cause to arrest him.
Here, the testimony of Officer Fou-cha and the affidavit in support of the *1107 search warrant executed by Sergeant Lampard established that Darryl Clay made a sale of narcotics to a confidential informant, who had already provided the police with the tip that a man named Darryl was selling drugs from the targeted location. The police officers had probable cause to arrest Clay, and lawfully conducted a lusearch incidental to that arrest. The trial court erred in suppressing the evidence seized from Clay’s person[4] and we reverse the judgment as to Clay.

CONCLUSION

For the reasons stated above the defense motion to dismiss the writ is denied. The trial court’s rulings as to the defendants Johnson and Clay are reversed. The ruling as to Dowell is affirmed.
MOTION TO DISMISS DENIED; RULINGS AS TO JOHNSON AND CLAY REVERSED; RULING AS TO DOWELL AFFIRMED.

. The trial court actually suppressed the evidence seized from Clay’s person, not the keys per se. Officer Amos testified that both the apartment keys and seventeen foils of heroin were found in the search of Clay.

. The Louisiana Supreme Court reversed on the grounds that the defendant had not been arrested; the Court did not dispute that probable cause for an arrest did not exist.

. The State might be able to meet its burden at trial; the court’s ruling that there was insufficient cause to bind the defendant over does not preclude the State continuing the prosecution of Dowell.

. It should be noted that the officers did not make a warrantless entry into the residence to effect the arrest of Clay, distinguishing this case from Kirk v. Louisiana, 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002), where the Supreme Court reaffirmed that both probable cause and exigent circumstances are necessary to make a warrantless entry to arrest a person. Furthermore, the Court in Kirk noted that the police officers had neither an arrest warrant nor a search warrant, implying that either type of valid warrant would have been sufficient for a search of Kirk.