JAMES F. McKAY III, Judge.
STATEMENT OF CASE
hOn November 2, 2006, the State charged Brian Mathieu with one count of simple possession of crack cocaine. At his arraignment on November 28, 2006, he pled not guilty to the charge. The court heard and denied his motion to suppress the evidence on December 14, 2006. On February 14, 2007, a six-person jury found him guilty as charged. The State noted its intent to file a multiple bill and the court reset the matter. Mathieu subsequently failed to appear and the court issued a capias for his arrest. On August 23, 2007, Mathieu appeared and pled guilty to the multiple bill. The court then sentenced him as a second offender to serve thirty months at hard labor. The court granted Mathieu’s motion for appeal on August 31, 2007.
FACTS
On the afternoon of September 6, 2006, N.O.P.D. Officer Todd Durel arrested the defendant, Brian Mathieu, in the 200 block of Bourbon Street for theft. At the scene, he conducted a frisk of Mathieu that revealed no weapons. After conversing with the bouncer of the club where Mathieu had been apprehended and the purported victim of the theft, Officer Durel walked Mathieu a few blocks to the 12Eighth District police station. Once there, he searched Mathieu and found in his left front pants pocket a small rock of what appeared to be cocaine. He then arrested Mathieu for possession of cocaine.
On cross-examination, Officer Durel admitted that at an earlier hearing he testified that he found the cocaine in Mathieu’s right pants pocket, but he explained that he was mistaken at that time because before the hearing he had not fully read the police report that he wrote soon after the arrest. He stated there was no indication that Mathieu was intending to sell the cocaine, nor did he remember Mathieu being in possession of any drug paraphernalia.
The parties stipulated that the criminalist who tested the rock would testify the rock tested positive for cocaine. They also stipulated the theft charge was refused by the District Attorney’s Office.
ERRORS PATENT
A review of the record reveals no patent errors.
ASSIGNMENT OF ERROR
By his sole assignment of error, the appellant contends that the trial court erred in denying his motion to suppress the evidence. Specifically, he argues that the State failed to present evidence to show that there was probable cause to arrest him for the theft; thus, the cocaine found during the search incident to his arrest should have been suppressed.
The officer seized the cocaine from the appellant after he was arrested and taken to the police station. A search incident to an arrest is an exception to the warrant requirement for searches. See *805 State v. Parker, 06-0053, p. 3 (La.6/16/06), 931 So.2d 353, 355; State v. Wilson, 467 So.2d 503 (La.1985); State v. Dowell, 03-1143 (La.App. 4 Cir. 9/24/03), 857 So.2d 1098; State v. Fontenot, 01-0178 (La.App. 4 Cir. 8/8/01), 795 So.2d 410. The appellant acknowledges this exception, but he maintains that the State did not present evidence to support a finding that there was probable cause for his arrest for the theft. He notes that neither the bouncer of the club where the appellant was apprehended nor the victim testified as to the events that led to his arrest, and the officer did not testify as to what these witnesses told him.
Officer Durel’s testimony at the suppression hearing basically tracked the testimony he gave at trial. In addition, he testified that as he was standing in the 200 block of Bourbon Street, a bouncer at the Club Frat House, located in the same block, flagged him down. He testified that the bouncer told him he had stopped the appellant as he was walking alone out of the club carrying a purse. Officer Durel’s testimony was somewhat confusing as to whether the appellant was still holding the purse when the officer first saw him or whether the bouncer told him that the victim walked up to the appellant and snatched the purse back from him. Nonetheless, the woman told the appellant that the purse was not his before she snatched it back. Officer Durel testified that he handcuffed the appellant and detained him while he spoke with the bouncer and the victim. After speaking with them for approximately an hour, he then formally arrested the appellant and walked him over to the police station. Officer Durel testified that once there, he ran the appellant’s name through the computer and found an outstanding domestic warrant for his arrest. At that point, he searched the appellant and found the cocaine. At the hearing, Officer Durel testified that he thought he seized the cocaine from the appellant’s right pocket, but after reviewing his report he stated that he seized it from his left pants pocket. He testified that during the frisk on the street, he did not feel the rock of cocaine because he was conducting just a brief frisk for weapons.
|4Contrary to the appellant’s assertions, the State showed probable cause for his arrest. “Probable cause to arrest exists when the facts' and circumstances known to the officer, and of which he has reasonably trustworthy information, aré sufficient to justify a man of ordinary caution in believing the person to be arrested has committed an offense.” State v. Parker, 06-0053, at p. 2, 931 So.2d at 355. See also State v. Wilson supra, 467 So.2d 503; State v. Dowell supra, 03-1143, 857 So.2d 1098. Although the officer did not testify as to exactly what the bouncer and the victim told him, his testimony established that the appellant was apprehended by the bouncer as he was walking out of the club carrying a purse. The victim walked up to the appellant and snatched the purse from him, telling him that the purse did not belong to him. While this evidence might not have supported a finding beyond a reasonable doubt that the appellant -took the purse, it gave the officer probable cause to believe that the appellant took the purse. Therefore, the officer could lawfully arrest the appellant for theft.
Moreover, once the officer learned that there was an outstanding warrant for the appellant’s arrest, he also had probable cause to arrest him on the warrant. In State v. Hill, 97-2551 (La.11/6/98), 725 So.2d 1282, the Court held that even if an officer did not have reasonable suspicion to stop a defendant and question him, subsequently learning that there was an outstanding warrant for' the defendant’s arrest was an intervening factor that purged *806 any taint from an illegal stop. In Hill, it appeared that the officers did not have reasonable suspicion to stop the defendant. Nonetheless, they ran his name and found that there was an outstanding warrant for his arrest. The trial court suppressed the evidence subsequently seized, and on review this court agreed, finding that the officers would not have learned of the outstanding warrant but for the illegal stop. State v. Hill, 97-1012 (La.App. 4 Cir. 9/17/97), 700 So.2d 551. The Supreme Court reversed, finding that the outstanding warrant “attenuated” the seizure from the possibly illegal stop.
The Court stated:
The primary purpose of the exclusionary rule is to deter future impermissible police conduct. The rule, which requires the exclusion of evidence gained through impermissible official conduct, is designed to deter unconstitutional methods of law enforcement. Louisiana has codified this jurisprudential doctrine in Louisiana Code of Criminal Procedure Article 703(A) which provides that a defendant, adversely affected by unconstitutional police misconduct may move to suppress any evidence on the grounds that it was unconstitutionally obtained, [footnote omitted] However, there are several well-settled judicial doctrines that supply exceptions to the exclusionary rule. If one of these doctrines is applicable, evidence seized following official misconduct may not require suppression. These three jur-isprudentially created doctrines which prevent the suppression of evidence are: (1) the independent source doctrine, (2) the inevitable discovery doctrine, and (3) the attenuation doctrine, [footnote omitted] Wong Sun v. U.S., 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963); U.S. v. Crews, 445 U.S. 463, 100 S.Ct. 1244, 63 L.Ed.2d 537 (1980); State v. Welch, 449 So.2d 468 (La.1984); State v. Guy, 575 So.2d 429 (La.App. 4 Cir.1991), writ denied 578 So.2d 930 (La.1991). Because we find that the attenuation doctrine provides an exception to the exclusionary rule in this case, we need not address the other doctrines.
In Brown v. Illinois, 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 427 (1975), the United States Supreme Court enunciated the multi-factor test presently used to consider whether evidence impermissibly seized should be suppressed. The primary considerations under Brown are: (1) the temporal proximity of the illegality and the acquisition of the evidence to which instant objection is made; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. Brown, 422 U.S. at 603, 95 S.Ct. at 2262, 45 L.Ed.2d at 427; State v. Scott, 389 So.2d at 1288. [footnote omitted] Additionally, in considering whether the evidence should be suppressed, Broum requires us to weigh each consideration in light of the policies behind the Fourth Amendment.
| State v. Hill, 97-2551 at pp. 2-4, 725 So.2d at 1283-1284. The Court noted that the warrant was an intervening circumstance which dissipated the “taint of an initial impermissible encounter.” State v. Hill at p. 5, 725 So.2d at 1285. After analyzing cases from other jurisdictions which also found that a warrant was an intervening event, the Hill Court stated:
Because we find an intervening circumstance under Brown, we need not decide whether the fourth circuit was correct in holding that the officers lacked reasonable suspicion for the initial Terry stop and frisk of the defendant because, assuming arguendo that the NOPD officers did conduct an im *807 permissible Terry stop, no evidence was recovered during that search; rather, the evidence was not seized until after the officers discovered the two outstanding arrest warrants, arrested the defendant, and conducted a lawful search incident to his arrest on the outstanding warrants. The officers’ [sic] did not arrest and search the defendant due to exploitation of the initial Terry stop or due to any evidence gained through the exploitation of the initial stop. Instead, the officers lawfully arrested the defendant pursuant to the outstanding arrest warrants under La. C.Cr.P.art. 213. The interim discovery of the existence of the two outstanding arrest warrants provided the sole basis for the defendant’s arrest and constituted an intervening circumstance under the third consideration of Brown.
Hill, at p. 8, 725 So.2d at 1286-1287 [emphasis added].
The Court emphasized that the contraband was found only after the officers had arrested the defendant on the outstanding warrant. See also State v. Cheatham, 04-0095 (La.App. 4 Cir. 5/19/04), 876 So.2d 137; State v. Marin, 01-0787 (La.App. 4 Cir. 1/9/02), 806 So.2d 894; State v. Perez, 99-2063 (La.App. 4 Cir. 9/15/99), 744 So.2d 173.
Here, as in the cases cited above, Officer Durel searched the appellant after learning of the outstanding warrant for his arrest. Thus, |7even if there had been no probable cause to arrest the appellant on the theft charge, any taint resulting from that arrest would have been purged by the intervening fact of the outstanding arrest warrant. Contrary to the appellant’s argument, the trial court correctly denied the motion to suppress the evidence. This claim has no merit.
Accordingly, we affirm the appellant’s conviction and sentence.
AFFIRMED.