MADELEINE M. LANDRIEU, Judge.
hBy this appeal the defendant, Jonta Gray, seeks reversal of his conviction of and sentence for illegal possession of a firearm and two related drug charges. For the reasons that follow, we affirm Mr. Gray’s conviction and sentence.
PROCEDURAL HISTORY
On February 9, 2010 the State filed a bill of information charging Mr. Gray with three offenses: one count of being a convicted felon in possession of a firearm, a violation of La. R.S. 14:95.1; one count of possession of marijuana with the intent to distribute, a violation of La. R.S. 40:966(A); and one count of possession of cocaine, a violation of La. R.S. 40:967(C). He was arraigned and pled not guilty. The trial court denied Mr. Gray’s motion to suppress the evidence and found probable cause to hold him for trial on all three counts.[1] On May 16, 2011 Mr. Gray was tried by a twelve-person jury, which found him guilty as charged on counts one and three. As to count two, the jury returned a responsive verdict of guilty of attempted possession of marijuana with the intent to distribute.
|2On the firearm charge, the court sentenced Mr. Gray to serve thirteen years at hard labor without the benefit of probation, parole, or suspension of sentence and to pay a fine of $1,000. On each of the drug counts, the court sentenced him to serve three years at hard labor, with the sentences to run concurrently. After Mr. Gray filed this appeal, the State filed a multiple bill only as to count three, possession of cocaine. On July 29, 2011, the defendant admitted to being a second offender; his sentence on count three was vacated and he was resentenced to three years at hard labor pursuant to La. R.S. 15:529.1.[2]
*517 On appeal, Mr. Gray’s sole contention is that the trial court erred by denying his motion to suppress the evidence. Therefore the testimony taken at the motion to suppress hearing and the testimony/evidence submitted at trial are pertinent to our review.
STATEMENT OF THE FACTS
I. Testimony at Motion Hearing
The incident that prompted the arrest of Jonta Gray and three co-defendants (Carlos Trask, Tashara Gray and Jontrell Gray)[3] began when a reliable confidential informant [“C.I.”] reported that a male was distributing marijuana from 1129 Flanders Street. Fourth District Narcotics Unit Detective Jonathan Hirdes successfully arranged for the C.I. to make a controlled buy at the targeted location. It was later learned that the person who sold marijuana to the C.I. was Carlos jriTrask, a resident of 1129 Flanders Street. Based on the information and controlled buy, Detective Hirdes applied for and was issued a warrant to search 1129 Flanders Street.
When members of the Fourth District Narcotics Unit were preparing to execute the search warrant, Detective Hirdes set up surveillance to see if the man who had sold marijuana to the C.I. was present at the location. Once he confirmed that Trask was there, he advised the members of the unit to proceed to the location to execute the warrant. Just prior to the officers’ arrival, while Detective Hirdes was maintaining surveillance, the defendant Jonta Gray drove into the driveway of 1127-1129 Flanders Street. 1127 and 1129 Flanders are two sides of a double residence with a common driveway and porch. Detective Hirdes saw the defendant step out of his vehicle, a Dodge Durango, leaving its driver’s side door open. The defendant then saw the police cars approaching and, according to Detective Hirdes, threw a clear plastic bag containing green vegetable matter into his vehicle. The driver’s side door remained open. Mr. Gray then walked to the front door of 1129 Flanders, speaking to Carlos Trask as he walked by him. Mr. Gray did not enter the building.
Almost immediately, six members of the Narcotics Unit arrived at the targeted location. One of these officers was Detective Rafael Dobard, who testified that, when he drove up, he saw Mr. Gray standing next to a red Dodge Durango. Detective Dobard stated that he saw Mr. Gray make a suspicious motion back toward the open door of the vehicle; however, the detective was unable to see |4if the defendant had discarded anything. Detective Quincy Jones, another one of the police officers arriving at the location, also testified at the hearing that he saw the defendant standing next to his Durango and then walking up to the front door of 1129 Flanders. Detective Jones testified further that he saw Mr. Gray open the front door of 1129 Flanders, but the defendant did not enter the residence. Detectives Dobard and Jones testified also that they were two of the officers who were assigned to secure the area outside of 1129 Flanders, while other members of the Narcotics Unit were assigned to execute the warrant. Detective Jones described the actions of himself and the other officers assigned to secure the outside of the premises. When they exited the police vehicles, the officers, with guns drawn, directed everyone outside to get on the ground. Everyone, including the defendant, complied. The officers handcuffed everyone and proceeded to frisk them for *518 weapons. Detective Jones frisked the defendant. During the pat down, Detective Jones felt a gun and retrieved a .380 caliber pistol from the pocket of the defendant’s pants. As he pulled the gun out, a plastic bag containing a white substance, later determined to be cocaine, fell out. Detective Jones placed Mr. Gray under arrest for possession of cocaine and possession of a concealed weapon.
After having placed the defendant under arrest, Detective Jones walked to Mr. Gray’s vehicle and looked through the open driver’s side door. He saw a plastic bag on the driver’s side seat; the bag contained vegetable matter, which appeared to be marijuana. After the bag was seized, it was discovered that there were smaller bags inside, each of which contained marijuana. Detective Jones | Justified that the defendant was not known to him prior to the incident, nor had there been any report that the defendant was armed. Detective Jones explained that the decision to frisk the defendant for weapons was based upon the detective’s experience, which indicated weapons are often discovered when the police are executing search warrants for narcotics.[4]
II. Trial testimony
Detective Jonathan Hirdes testified that he conducted surveillance of 1129 Flanders Street while a C.I. made a controlled purchase from a suspected dealer at the residence. Based on the purchase and the surveillance, the police obtained a search warrant for the location. After the warrant had been obtained, Detective Hirdes again established his surveillance of the residence. When he observed the target of the investigation, he advised other members of the unit that they should execute the search warrant. Just prior to the officers’ arrival, Detective Hirdes saw a red Dodge Durango driven by the defendant pull into the driveway. Detective Hirdes testified that he saw the defendant exit the Durango. Just as Mr. Gray exited, he saw the police cars approaching, and he threw a clear bag of vegetable matter back in his vehicle. Detective Hirdes stated that he was able to see the defendant from his position, and that he had the use of binoculars to assist in observing the scene.
| (iAfter the other officers had arrived and were executing the warrant, Detective Hirdes left his surveillance post and arrived at the residence. He saw that a bag of marijuana had been retrieved from the Durango. He identified the bag at trial. Detective Hirdes also testified that the defendant, after having been advised of his rights, made a statement indicating that he used cocaine to enhance his sexual prowess. During his testimony, Detective Hirdes admitted that the police report, which he had authored, contained an error. He noted that the defendant had not entered either residence, contrary to what was reflected in the report. The detective also admitted that the report erroneously reflected that Carlos Trask had been inside the residence, rather than outside. Moreover, Detective Hirdes, after being *519 presented with the gist portion of the initial report, admitted that it reflected that the defendant had thrown the bag into the rear window of the Durango, instead of into the front seat as the detective had testified. Detective Hirdes explained that he had made a mistake when he had prepared the gist and the full report. Finally, over defense counsel’s objection, Detective Hirdes was allowed to testify that, in his experience, the packaging of the marijuana found in the defendant’s vehicle was consistent with narcotics sales. He gave a detailed description regarding the size of the baggies and the approximate cost to purchase the various quantities.
Detective Quincy Jones, who also had testified at the motion hearing, stated that he, accompanied by other police officers, approached 1127-1129 Flanders in the middle of the day in multiple vehicles for the purpose of executing a search warrant at 1129 Flanders. As they arrived at the targeted location, Detective Jones |7saw the defendant standing next to a Dodge Durango; the driver’s door was open. He then saw the defendant walk down the driveway toward the doors to the double residence. The detective explained that the front doors of the building did not face the street; rather, they faced the driveway. The defendant walked to the open doorway farthest from the street and was about to enter the residence when he was detained by Detective Jones. Detective Jones handcuffed the defendant and patted him down. While frisking Mr. Gray, Detective Jones felt a hard object, which felt like a handgun, in the defendant’s pocket. As the detective removed the weapon from Mr. Gray’s pocket, a small clear plastic bag containing a white powder fell out. The defendant was fully searched, and the police seized a key to the Durango and seventy dollars.
After the defendant had been placed under arrest for concealing a gun and possessing cocaine, Detective Jones looked inside the driver’s door of the Durango. On the front seat he observed a clear plastic bag. Inside were five more plastic bags. Four contained green vegetable matter; the fifth bag contained seven smaller plastic bags that each held green vegetable matter. The contents of the bags later tested positive for marijuana. Detective Jones testified that, in his experience making narcotics arrests, the way in which the marijuana was packaged was consistent with narcotics sales.
The final State witness at trial was Officer Joseph Pollard, a fingerprint expert, who testified that he had obtained the defendant’s fingerprints in court on the morning of trial. He then had determined that the fingerprints matched those ^obtained in a prior case in which Jonta Gray had pled guilty to attempted manslaughter.
The defense called as its first witness Detective Dobard, who had testified for the State at the motion hearing. Detective Dobard repeated his prior testimony, in particular that he had observed the defendant make a hand motion as if he were throwing something in his vehicle as the officers had driven up to the targeted residence. The detective again stated that he could not see what the defendant was throwing, if anything, into the vehicle
Ms. Consuella Dixon was called as the second defense witness. Ms. Dixon testified that she had been engaged to the defendant, Jonta Gray, at the time of his arrest. After receiving a phone call from a man who indicated he was a police officer, she drove to 1127-1129 Flanders Street. She knew the defendant’s brother Jontrell and knew that he lived at 1127 Flanders. When she arrived, she saw her vehicle, a red Dodge Durango. She was *520 unable to retrieve it, however, because Jonta Gray had her car key. After she obtained a spare key from home, she opened up the vehicle and discovered that the upholstery had been torn up and the contents of the console strewn about. She also testified that Jonta Gray had dropped her off at work at approximately 7:00 a.m. on the morning of day he was arrested, and that she had not seen him again that day.
The final defense witness was Milton Wallace, who testified that he was standing in the driveway of 1129 Flanders Street on December 7, 2009, talking with Jontrell Gray when Jonta Gray arrived in a red Durango. Jonta parked the |9vehicle, got out, and walked over to the two men and shook their hands. The three men then began talking. According to Mr. Wallace, the defendant did not leave the doors of the Durango open, and the windows were rolled up. After a few minutes, Carlos Trask walked out of 1129 Flanders Street. The police then arrived and, with guns drawn, ordered everyone to the ground and handcuffed them. He stated that police officers searched everyone while other police officers entered the residence. Mr. Wallace denied that the defendant ever attempted to walk inside 1129 Flanders. He also testified that he did not see a gun being removed from the defendant’s possession, although he did see an officer empty the defendant’s pockets, removing an identification card and some money.
Mr. Wallace further testified that he had only known the defendant for a few months, but had been acquainted with the defendant’s brother Jontrell since eighth grade. Mr. Wallace also admitted that he himself was in possession of marijuana at the time he observed Jonta and Jontrell being arrested.

ERRORS PATENT

A review of the record for errors patent reveals that there are none.

ASSIGNMENT OF ERROR

In his sole assignment of error, Mr. Gray contends that the trial court erred when it denied his motion to suppress the evidence. He argues first that the testimony elicited at trial from Detective Hirdes regarding mistakes in the police report casts doubt on the correctness of the trial court’s ruling. He further argues that there was no basis to arrest and search him. In his brief he does not address linthe fact that he was frisked first and was arrested only after being found in possession of a concealed weapon and cocaine. The marijuana was seized from the vehicle after Mr. Gray’s arrest.
Because the evidence at issue in this matter was seized from the defendant’s person and his vehicle without a warrant, pursuant to La.C.Cr.P. art. 703(D) the State bore the burden of proving that it was constitutionally seized. See State v. Wells, 2008-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581. It is well-settled that an appellate court should review a trial court’s ruling under a deferential standard with regard to factual determinations, while legal findings are subject to a de novo standard of review. State v. Hunt, 2009-1589, p. 6 (La.12/1/09), 25 So.3d 746, 751; State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867. Moreover, a trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion. Wells, supra, at p. 5, 45 So.3d at 581. In reviewing a denial of a motion to suppress, an appellate court is not limited to the evidence adduced at a suppression hearing, but may consider all pertinent evidence adduced at trial. State v. Brumfield, 96-2667 (La.10/20/98), 737 So.2d 660, 683 (cit *521 ing State v. Green, 94-0887, p. 11 (La.5/22/95); 655 So.2d 272, 280).
A police officer executing a search warrant may briefly detain and frisk a person who is present at a location, even if the person does not reside at the target location, if the officer possesses reasonable suspicion such as would justify an investigatory stop and articulates why such action was necessary for officer safety. See State v. Robinson, 2009-1269, pp. 4-5 (La.App. 4 Cir. 5/12/10), 38 So.3d 1138, 1141. Also, if objectively reasonable under the circumstances, handcuffing the person does not exceed the scope of the investigatory stop. See State v. Porche, 2006-0312 (La.11/29/06), pp. 7-8, 943 So.2d 335, 339, and cases cited therein. See also, State v. Palmer, 2009-0044 (La.7/1/09), 14 So.3d 304. In Palmer the officers did not have a search warrant, although they had received several tips concerning drug activity at the residence. After receiving yet another tip concerning drug activity, the officers approached the residence and saw many people outside, some of whom had come out of the residence and then gone to cars as if to leave. The officers detained everyone in the area of the residence, including the defendant, whom the officers found on the back porch. The Court found that, given the circumstances of the case, the officers were justified in detaining and handcuffing the defendant and the other people for the duration of the investigation.
Similarly, in State v. Boyer, 2007-0476 (La.10/16/07), 967 So.2d 458, the Louisiana Supreme Court sanctioned a pat down for weapons following a comparable restraint of the defendant, who was forced to the ground and placed in handcuffs while the officer frisked him for weapons. In Boyer the police were executing a search warrant for narcotics at a mobile home. The defendant was observed to be approximately twenty feet from the mobile home when the police arrived. The defendant was holding a cell phone up to his ear and appeared to be talking. When the defendant observed the police, he lowered his phone and began 112frantically digging in his pocket. The officer ran towards the defendant yelling “police” and ordering the defendant to get to the ground and to remove his hand from his pocket. When the defendant did not immediately comply, the officer took action. The officer testified that he believed the defendant may have had a small weapon in his pocket, noting that weapons are usually involved with drugs. Although the Court did not directly assess the reasonableness of the detention, it sanctioned the stop and frisk, noting that execution of a warrant may give rise to sudden violence or frantic efforts to conceal or destroy drugs. Citing Michigan v. Summers, 452 U.S. 692, 703, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (1981), the Court noted that when executing search warrants, the “risk of harm to both the police and citizens is minimized if the officers routinely exercise unquestioned command of the situation.” Boyer, p. 18, 967 So.2d at 470.
More recently, in State v. Thompson, 2011-0915 (La.5/8/12), 93 So.3d 553, the Louisiana Supreme Court again addressed whether it was permissible for the police to detain, frisk, handcuff, and question a person who happened to be in the vicinity of a place to be searched pursuant to a warrant, specifically in that case, two nonadjacent motel rooms. Mr. Thompson was staying in Room 29 of the motel with his girlfriend and happened to be walking outside when the police arrived to execute search warrants for Rooms 31 and 37. According to the trial court’s factual findings, Mr. Thompson was standing near or in front of Room 31 when the police arrived. Because Mr. Thompson, as well as *522 two other men who were parking then-cars when the police arrived, were near the rooms to be |¾(¡searched, the police ordered them to the ground and handcuffed them. Mr. Thompson was frisked, but no weapon or contraband was found. After being advised of his rights, Mr. Thompson provided the officers with his identification and an explanation for his presence at the motel. He also pointed out his truck in the parking lot. When asked if he had anything illegal in the truck, he admitted that he had a gun in it and that he was a convicted felon; he later admitted that there was cocaine in the truck, and he consented in writing to a search.
On appeal, Mr. Thompson conceded that his initial detention was proper but argued that handcuffing and questioning him had gone beyond the legal detention necessary to protect the officers who were executing the warrants. The appellate court found that the trial court had erred by denying Mr. Thompson’s motion to suppress, but the Louisiana Supreme Court reversed. The Court held that the initial detention, the continued detention, and the use of handcuffs were valid, and thus the consent to search was not tainted. Based on the totality of the circumstances, the Court concluded:
[I]t was reasonable for the police officers to briefly detain those persons in and immediately around the target rooms of the search warrants to ascertain their identities, maintain the status quo over a large physical area, and seek an explanation of their presence near (or at) the scene of the suspected narcotics distribution operation.
Thompson, supra, p. 23, 93 So.3d at 570 (Citation and footnote omitted).
Then, citing State v. Porche, 2006-0312, pp. 7-9 (La.11/29/06); 943 So.2d 335, 339-340, which had addressed at length the separate issue of when it is permissible to use handcuffs to effect a detention, the Court held that the use of | t4handcuffs in Thompson did not escalate the investigatory stop into an arrest for which probable cause would be required. The Court stated:
Here, the officers were simultaneously exercising two narcotics search warrants, a type of investigation known to endanger officers with the possibility of sudden violence. A neutral and detached magistrate had already found probable cause of criminal activity in the area and authorized warrants to search. Agent Parker’s role in the encounter was to protect the entry teams from harm and to prevent individuals from running away.
Moreover, the experienced officers were aware that seemingly innocent individuals in the location of narcotics dealing may nevertheless be connected to that criminal activity, acting in the form of lookouts. A police officer observing Thompson’s movements of leaving his motel room ... at the moment the officers arrived, walking in the direction of Room 31 (a target of the search warrants), and standing in or leaning in the room where he admitted he knew the occupants, could reasonably lead the officers to conclude that Thompson was somehow connected to the narcotics activity under investigation.
Thompson, pp. 25-26, 93 So.3d at 571.
Similarly, the testimony of the police officers in the instant case supports the decision to detain, handcuff, and frisk Mr. Gray. When he saw the approaching police cars, Mr. Gray threw a plastic bag containing vegetable matter into his vehicle, according to Detective Hirdes. Although Detective Hirdes acknowledged at trial a discrepancy between his testimony *523 and his report, which reflected that the bag was thrown through the rear window rather than through the open driver’s door, Detective Dobard consistently testified at the motion hearing and at trial that he observed the defendant make a motion back toward the open door of the vehicle, thus corroborating that the defendant had thrown something into the car. Moreover, Detective Jones corroborated the testimony of Detective Dobard. The judge and jury accepted the testimony of Detective Hirdes, which is a credibility Indecision owed deference by this Court. Detective Hirdes’s testimony that the defendant threw a bag of material consistent with marijuana supports a reasonable belief that Mr. Gray was involved in the drug sales occurring from 1129 Flanders, as marijuana was the drug being sold from there. The detectives also testified that Mr. Gray had approached the door of 1129 Flanders, the targeted residence, not the doorway of 1127 Flanders, where his brother Jontrell apparently lived. This fact further linked the defendant to the marijuana sales occurring from 1129. Finally, Detective Jones testified that his decision to frisk the defendant was based upon his personal experience that weapons often were involved when search warrants for narcotics were executed. The detective’s past experience was further validated in this case, as both the defendant and his brother Jontrell Gray were found to be carrying concealed weapons, and another gun was discovered inside the house. Considering the totality of the circumstances, we conclude that the trial court correctly upheld the seizure of the cocaine and firearm from the defendant’s person.
The defendant makes no specific argument in his brief challenging the seizure of the marijuana, which was taken from his vehicle rather than from his person. We note, however, that the detec-fives testified that they had observed the bag of marijuana from outside the vehicle through the open door of the Durango. Thus, after Mr. Gray had thrown the bag into the vehicle, the evidence was in plain view, and therefore lawfully seized. See State v. Brown, 42,188, p. 28 (La.App. 2 Cir. 9/26/07), 966 So.2d 727, 747 (“Law enforcement officers peering into the interior of a vehicle ... are not conducting a search under the Fourth |1fiAmendment,”) (citing State v. Schouest, 351 So.2d 462 (La.1977)); see also, State v. Young, 39,546 (La.App. 2 Cir. 3/2/05), 895 So.2d 753, and State v. Daniels, 614 So.2d 97 (La.App. 2 Cir.1993). Even if Detective Jones had not already frisked the defendant and discovered the gun in his pocket, once the officers saw the bag of marijuana in plain view in Mr. Gray’s vehicle, they had probable cause to arrest him. Inevitably, the gun and cocaine in his pocket would then have been discovered during a legal search incident to the defendant’s arrest for possession of marijuana. See State v. Parker, 2006-0053 (La.6/16/06), 931 So.2d 353; State v. Mathieu, 2007-1579 (La.App. 4 Cir. 6/25/08), 988 So.2d 803; State v. Dowell, 2003-1143 (La.App. 4 Cir. 9/24/03), 857 So.2d 1098.
Accordingly, the trial court correctly denied the appellant’s motion to suppress the evidence.

CONCLUSION

For the reasons stated, Mr. Gray’s conviction and sentence are affirmed.
AFFIRMED

. The defendant sought supervisory review of the trial court's denial of his motion to suppress evidence; this court denied the writ application on the grounds that the defendant had an adequate remedy on appeal. State v. Gray, unpub., 2010-1562 (La.App. 4 Cir. 12/2/10).

. Although the court did not alter the defendant's term of incarceration, sentencing him under the multiple bill provision could negatively affect other aspects of his sentence, such as his eligibility for “good time.”

. Two of the co-defendants pled guilty to lesser offenses, and one was tried and acquitted of first-offense possession of marijuana.

. In other testimony given by the State’s witnesses, it was established that Jontrell Gray is the defendant’s brother and resided at 1127 Flanders Street. Tashara Gray resided at 1129 Flanders Street with Carlos Trask. Marijuana was found in plain view in the front room of 1129 Flanders, and a gun was seized from a bedroom where Tashara Gray was found. Jontrell Gray was outside with Carlos Trask when the police arrived, as was another man, who is not a part of the case. During the frisk of Jontrell Gray, the detective discovered a .22 caliber weapon in Jontrell’s pocket. Marijuana was found in another of his pockets in a search incident to his arrest for carrying a concealed weapon. 1127 Flanders Street was not searched.