ROLAND L. BELSOME, Judge.
The defendant, Ivan Caliste, appeals his criminal conviction under State v. Crosby,[1] asserting that the trial court incorrectly denied his motion to suppress the evidence. We affirm and remand for a correction of patent error.

STATEMENT OF CASE

The defendant was charged by bill of information with one count of possession with the intent to distribute heroin. The defendant pled not guilty at arraignment. After a hearing, the trial court denied his motion to suppress the evidence.[2] The *904 defendant later pled guilty to the lesser offense of simple possession of heroin, reserving his right under Crosby to appeal the court’s denial of his motion to suppress the evidence. After entering his guilty plea, the defendant was sentenced to serve four years at hard labor; his sentence was suspended; and he was placed on active probation for four years. He was also ordered to pay a fine of $1000. This appeal followed.

ERRORS PATENT

The minute entry from sentencing and the sentencing commitment reflect |2that the defendant pled guilty to “POSS WITD” heroin; however, the transcript reflects that defendant actually pled guilty to possession of heroin. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). We therefore remand and instruct the trial court to amend the minute entry from sentencing as well as the sentencing commitment to conform to the transcript. We further direct the Clerk of Court to transmit the corrected sentencing commitment to the officer in charge of the institution to which defendant has been sentenced and to the Louisiana Department of Corrections Legal Department. See La. C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846 (per curiam).

DISCUSSION

The defendant was arrested after heroin was seized from an ice chest inside of his work truck. He assigns as error the trial court’s denial of his motion to suppress the evidence. To support his claim that the State failed to meet its burden of proving that the warrantless search of his work truck was justified,[3] the defendant makes three arguments: 1) the State did not call the officers who were present when the search was conducted; 2) the tip from the informant did not give officers reasonable suspicion of criminal activity to justify a stop; and 3) the officers could hot search the truck as incident to arrest.
Detective Gabriel Favarot of the New Orleans Police Department was the only witness to testify at the suppression hearing. Detective Favarot testified that |Ron May 10, 2010, he received a tip from a reliable confidential informant[4] revealing that a Sewerage and Water Board (S & WB) worker was selling heroin from his work truck near the corner of North Pri-eur Street and Orleans Avenue. The informant described the worker as an older black male with gray hair and glasses, approximately 5'7" to 5'10" tall.
Based upon this tip, Detective Favarot set up a surveillance of that corner, while other officers were stationed in the area. During the investigation, Detective Favar-ot observed the defendant, who fit the informant’s description, exit a S & WB truck near the intersection. The defendant walked to the corner of the intersection and met with an unknown subject. *905 They spoke briefly and the subject gave the defendant currency. The defendant walked back to the S & WB truck, retrieved a red and white ice chest from inside of the truck, and took a small object out of the ice chest. He then walked back to the subject and looked around before handing the object over. After receiving the object, the subject walked away.
The defendant returned to the S & WB truck and exited the scene with another S & WB worker, later identified as Ronald Eagleton. Detective Favarot followed. Mr. Eagleton then drove to the intersection of Elysian Fields Boulevard and North Claiborne Avenue, where he pulled over in front of a gas station. After arriving at that location, the defendant flagged down a second subject, who walked over to the passenger side of the truck, where the defendant was sitting. The second subject gave the defendant money, and the defendant handed over a small object. The second subject walked away, and the truck left the scene.
14After receiving notification from Detective Favarot, Sergeant Imbraguglio and Detectives Bishop and Smith stopped the truck. Both the defendant and Eagleton were ordered to exit the vehicle and advised that they were under investigation for narcotics activity. Detective Bishop went to the ice chest, which was still open, and removed a pill bottle and two clear plastic bags. Inside of the pill bottle, Detective Bishop found rice and sixteen foil packets containing a brown substance consistent with heroin. The two plastic bags also contained a brown substance consistent with heroin.[5] Detective Bishop then advised the two men of their Miranda rights and placed them under arrest. Incidental to arrest, the officers seized $218 from the defendant.
Detective Favarot also testified that after their arrest, both men gave written statements. Eagleton’s statement indicated that the drugs belonged to the defendant. The defendant acknowledged that the drugs were his and stated that Eagle-ton had no knowledge of the drugs.[6]
On cross-examination, Detective Favarot admitted that he was not on the scene when the defendant was stopped. However, he acknowledged that the officers did not have a search warrant or consent to search the truck.
The defendant asserts that the State failed to establish that the warrantless search of the vehicle was justified once they removed him and his co-worker from the truck.
Because the heroin and money were seized without a warrant, the State had the burden of showing a lawful basis for the seizure. See La.C.Cr.P. art. 703; State v. Wells, 08-2262, p. 5 (La.7/6/10), 45 So.3d 577, 581. We review a trial court’s ruling on a motion to suppress under the abuse of discretion standard. Wells, supra. Although it is well-settled that an appellate court should review a trial court’s rulings under a deferential standard with regard to factual determinations, its legal findings are subject to a de novo standard of review. State v. Hunt, *906 09-1589, p. 6 (La.12/1/09), 25 So.3d 746, 751 (citation omitted).
First, the defendant argues that the State failed to elicit sufficient evidence as to the search of the ice chest because it did not call any of the officers who were present when the search occurred. However, because the testimony concerning the search was taken during a suppression hearing, the State was allowed to elicit what the other officers told Detective Fa-varot. Hearsay evidence is admissible in a hearing on a motion to suppress. See State v. Shirley, 08-2106 (La.5/5/09), 10 So.3d 224; State v. Washington, 99-1111 (La.App. 4 Cir. 3/21/01), 788 So.2d 477. Thus, under the circumstances of this case, the mere fact that the State did not call the officers who were present when the drugs were found in the ice chest does not automatically render the State’s proof of the legality of the search insufficient.
Next, the appellant argues that the tip from the informant was not sufficient to give the officers even reasonable suspicion of criminal activity on his part to allow them to stop him. See La.C.Cr.P art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Temple, 02-1895 (La.9/9/03), 854 So.2d 856. The defendant cites to Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), in concluding that there was no reasonable suspicion for the stop because the tip contained no predictive information other than the defendant’s presence at the area |Bwhere the informant said he would be. Contrary to the appellant’s argument, the tip was corroborated when Detective Favarot’s observed two hand-to-hand transactions. Together, this information gave the officers reasonable suspicion to stop the S & WB truck.
Moreover, this evidence also establishes that the officers could search the truck pursuant to the “automobile” exception to the warrant requirement. This court discussed this exception in State v. Anderson, 06-1031, p. 5 (La.App. 4 Cir. 1/17/07), 949 So.2d 544, 547-548:
Although a warrant is generally required prior to conducting a search, California v. Carney, 471 U.S. 386 [105 S.Ct. 2066, 85 L.Ed.2d 406] (1985), the “automobile exception” to this requirement is well-established. Carroll v. United States, 267 U.S. 132 [45 S.Ct. 280, 69 L.Ed. 543] (1925). Pursuant to the “automobile exception”, there is no separate exigency requirement if there is probable cause to search a vehicle. U.S. v. Ross, 456 U.S. 798, 809 [102 S.Ct. 2157, 72 L.Ed.2d 572] (1982); see Pennsylvania v. Labron, 518 U.S. 938, 940 [116 S.Ct. 2485, 135 L.Ed.2d 1031] (1996) (“If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more.”); see also State v. Thompson, 2002-0333 (La.4/9/03), 842 So.2d 330 (if a vehicle is readily mobile, there is no difference between seizing the car while obtaining a search warrant and immediately searching the vehicle without a warrant). Thus, if there is probable cause to search and the vehicle is readily mobile, even if stationary at the time the search proceeded, any evidence will be considered constitutionally seized.
See also Maryland v. Dyson, 527 U.S. 465, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999); State v. Meyers, 11-1145 (La.App. 4 Cir. 9/19/12), 100 So.3d 938; State v. Adams, 04-2177 (La.App. 4 Cir. 6/29/05), 909 So.2d 5.
Given the tip and Detective Favarot’s observations, the officers who stopped the S & WB truck had probable cause to be *907 lieve that the ice chest located inside the 17truck contained drugs.[7] Thus, Detective Bishop could lawfully search the ice chest and seize the contents believed to be contraband within it. Upon finding the drugs, the officers had probable cause to arrest the defendant and Eagleton. Incidental to his arrest, the officers seized money from the defendant’s person. See State v. Parker, 06-53 (La.6/16/06), 931 So.2d 353; State v. Mathieu, 07-1579 (La.App. 4 Cir. 6/25/08), 988 So.2d 803; State v. Dowell, 03-1143 (La.App. 4 Cir. 9/24/03), 857 So.2d 1098.
Finally, the appellant also cites Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), and argues that the officers could not search the truck “as incidental to their arrests,” after the defendant and Eagleton were removed from it. In Gant, the Court considered whether police officers could search a suspect’s vehicle incidental to his arrest when the suspect had been removed from the vehicle and had no access to the vehicle. The Court found that where there is no possibility that the suspect could reach anything in the passenger compartment, officers are not justified in searching the passenger compartment without first obtaining a warrant. The Court further held, however: “we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is ‘reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.’ Thornton [v. U.S.] 541 U.S. [615], at 632, [124 S.Ct. 2127 (2004)] (Scalia, J., concurring in judgment).” Gant, 556 at 343, 129 S.Ct. at 1719. The Court noted that many times, especially in traffic stops as was the case in Gant, the arresting officer would have no probable cause to believe that there is evidence of a crime contained in the vehicle, and thus if the defendant is removed from the vehicle and has no access to it, a search incidental to the traffic arrest would not include the passenger area of the car.
Gant does not apply to this case, because the ice chest inside the truck was not searched incidental to the appellant’s arrest; indeed, he was not arrested until after Detective Bishop went to the open ice chest and seized the drugs inside. Instead, Detective Bishop seized the drugs from the ice chest in the S & WB truck because she had probable cause to believe that the chest in the truck contained drugs.
Based on these circumstances, we cannot find that the trial court abused its discretion in denying the defendant’s motion to suppress the evidence. Accordingly, the defendant’s conviction is affirmed.
*908 AFFIRMED; REMANDED WITH INSTRUCTIONS.

. 338 So.2d 584 (La.1976).

. The defendant sought supervisory review, but this Court denied his writ, finding that he *904 would have an adequate remedy on appeal if he was convicted. State v. Caliste, unpub. 2011-K-1311 (La.App. 4 Cir. 9/16/11).

. Relying on the police report, the defendant also argues that the officers had no legal basis to search his personal vehicle. However, there was no testimony elicited at the hearing to suggest that the officers searched and recovered any evidence from the defendant’s personal vehicle. Moreover, the police report was not introduced into evidence at the hearing. Accordingly, our discussion is limited to the evidence seized from the ice chest and the defendant after his arrest.

. Later on cross-examination, Detective Fa-varot stated that the informant was paid in connection with this case and with other cases.

. At the close of the hearing, the State entered the crime lab report into evidence, which confirmed that the brown substances were heroin.

. Detective Favarot further testified that once the defendant was arrested, the officers obtained a warrant to search the defendant's home, where they seized forty dollars, two used sandwich bag boxes, two used boxes of aluminum foil, a photo of the defendant, an envelope with the defendant's name, a set of keys, and a pill bottle containing five orange pills. However, the evidence recovered pursuant to the search warrant is not at issue in this appeal.

. Despite the defendant’s argument to the contrary, the collective knowledge doctrine, or "fellow officer rule[,”] provides that in certain circumstances, several officers' observations can be aggregated to establish the probable cause needed for a warrantless search or seizure, or to obtain a search or arrest warrant under the Fourth Amendment. The courts have applied this doctrine where teams of officers, central dispatches, police computer systems, police from other jurisdictions or agencies, and undercover officers have shared information leading to the establishment of probable cause. State v. Mundy, 11-1000, pp. 6-7 (La.App. 3 Cir. 4/4/12), 87 So.3d 300, 305 (citing Kimberly J. Winbush, Application in State Narcotics Cases of Collective Knowledge Doctrine or Fellow Officers’ Rule Under Fourth Amendment—Cocaine Cases, 4 A.L.R.6th 599 (2005)). See also State v. Elliott, 09-1727, p. 5 (La.3/16/10), 35 So.3d 247, 251 (citations omitted) (the determination of whether probable cause exists for an arrest or reasonable suspicion for an investigatory stop is a purely objective inquiry that takes into account all of the information known collectively to the law enforcement personnel involved in the investigation).